Filed 12/26/13  P. v. Lexington Nat. Ins. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>LEXINGTON NATIONAL INSURANCE CORPORATION,<br><br>　　　　Defendant and Appellant. | A135495<br><br>(San Francisco City & County Super. Ct. No. 10018652 ) |
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>LEXINGTON NATIONAL INSURANCE CORPORATION,<br><br>　　　　Defendant and Appellant. | A135930<br><br>(San Francisco City & County Super. Ct. No. CPF-12-512224) |

Defendant and appellant Lexington National Insurance Corporation (Lexington) filed an appeal of the trial court's order denying its motion pursuant to Penal Code[1] section 1305 to vacate forfeiture and exonerate its bail bond (case No. A135495) and an appeal of the trial court's subsequent entry of summary judgment (case No. A135930). Having consolidated the appeals for purposes of briefing and decision, we now affirm the trial court's order and entry of judgment.

---

[1]  Further statutory references are to the Penal Code unless otherwise specified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The defendant in the underlying criminal case is Grachelle Languban. The record demonstrates that on June 21, 2010, Languban appeared in court for arraignment on numerous charges of fraud and forgery. Bail was set at $100,000 and the case was continued. On January 13, 2011, Languban appeared with counsel at a hearing on a defense motion to reduce bail. The court granted the motion, set bail at $40,000, continued the case for argument regarding bifurcation of the preliminary hearing, and ordered defendant to appear. According to the clerk's minutes entered on February 3, 2011, Languban appeared with counsel at the hearing on that date. At the hearing, the clerk entered dismissal of counts 10 and 12 through 19, and added counts 25 through 33 to reflect the consolidated second amended felony complaint filed on October 28, 2010. Defense counsel waived any irregularities with the amendment and waived formal filing of an amended complaint. The defendant entered not guilty pleas as to each count and denied any and all allegations. The court continued the case to February 7, 2011, for ruling on the request for a bifurcated preliminary hearing, and ordered defendant to appear at that time.

Defendant Languban failed to appear as ordered at the hearing held on February 7, 2011. The court ordered bail forfeited and issued a bench warrant. The clerk's minutes state: "The above named defendant having neglected to appear for RULING ON BIF PRELIM and no sufficient excuse for such non-appearance being presented to the Court[,] [¶] [t]he Court directs the surety bond/cash money in the amount of $40000 heretofore deposited as bail in this action is hereby declared forfeited pursuant to Penal Code Section 1305. [¶] . . . [¶] This is the 1st bench warrant issued in this case."

The clerk of the superior court mailed notice of the court's order forfeiting the bail bond to Lexington on February 22, 2011. The notice advised Lexington its surety bond No. 2011EE002365, posted on behalf of defendant Languban, had been ordered forfeited for Languban's failure to appear and its contractual obligation to pay the bond would become absolute on August 26, 2011, "the 181st day following the date of mailing of this NOTICE unless the court shall sooner order the forfeiture(s) set aside." At some point

2

thereafter, the court granted a 180-day extension of time until February 22, 2012, for Lexington to move to vacate the forfeiture.

On February 21, 2012, Lexington filed a motion to vacate forfeiture and exonerate bail and gave notice the motion would be heard on March 21, 2012. The motion included a declaration by Terry Fowler a licensed bail agent. In his declaration, Fowler states he sent a letter to San Francisco Assistant District Attorney (DA) Sandip Patel on January 5, 2012, informing Patel of defendant Languban's location in the Philippines and asking whether or not Patel's office intended to extradite Languban on this matter. Fowler further states he spoke with Deputy DA Patel on February 8, 2012; Patel told Fowler the DA's office was currently evaluating the case for extradition and "he would get back to [Fowler] with a decision."

Lexington's motion also included a declaration by investigator Jerry Anderson. According to his declaration, Anderson was in the Philippines between January 9 and February 9, 2012, to locate several defendants and one of the defendants located was Grachelle Languban Cano, the defendant in this case. His investigation revealed defendant Languban had entered the Philippines on February 6, 2011, on Philippines Airlines flight No. 103 from Los Angeles. Philippines National Police assisted Anderson in his investigation into Languban's whereabouts in the Philippines. The investigation subsequently led to information Languban was residing in the City of Valenzuela, at "227 Lords Candle St. De Castro Subdivision Paseo de Blas." Anderson and his colleagues arrived at this location in the early evening on January 31, 2012, and interviewed several people, showing them the booking photo of defendant Languban. A male named Oscar Ramos who was at the local "sari sari market" next to No. 227 recognized Languban; Ramos stated Languban stayed at No. 227 for six months and had relocated to the island of Cebu to live with her aunt. Anderson traveled to Cebu and met with Philippine National Bureau of Investigation (NBI) agents, who confirmed defendant Languban was in Cebu and had returned to Valenzuela City.

Included as exhibit C to the motion is an "Identification Affidavit" signed by Anderson stating that on February 6, 2012, a person he identified as Languban was

3

temporarily detained in his presence by Philippine Police Officer Emmanuel Roble. The affidavit was also signed by Roble.

Also included as exhibit D in Lexington's motion is a document regarding defendant Languban prepared and initialed by special investigator Emmanuel Robles on NBI letterhead, stating: "This is to inform the [San Francisco DA] [t]he person Grachelle Languban Cano has been located here in the Metro Manila area, City of Valenzuela, Philippines[.] [¶] [Languban] was identified by our Bureau of Immigration entering our country on February 6, 2011 . . . . [¶] Agents of the [NBI] have located and identified the subject . . . . Our Judicial Legal System here does not conduct forcible interview unless there is a criminal action pending against this person here in the Philippines. And a request for assistance is done by the US Embassy here in the Philippines through proper procedures. [¶] In order to proceed to obtain a physical photo and fingerprint of this person, a criminal complaint would have to be filed through the State Department in order to obtain an arrest warrant for [Languban]. [¶] Further action against this person has been suspended until criminal complaint has been filed."

At the scheduled hearing on Lexington's motion held on March 21, 2012, Deputy DA Patel appeared to inform the court regarding extradition, stating: "The case that involves this matter . . . is very complex, and I'm in trial on it. We've decided at this time not to elect to extradite her, which I just want to make clear, doesn't mean that we will not extradite her in the future, but at this point we're not going to extradite her." Thereafter the court entertained argument of counsel. During argument, the court expressed misgivings regarding apparent inconsistencies in the documents provided by Lexington "with respect to what happened in terms of the detention," and noted Robles's signatures on exhibits C and D did not "appear to be the same." Seeking to clarify the record on these points, counsel for Lexington requested an extension of time and an evidentiary hearing in order to present testimony from investigator Anderson. The court granted the request, called for further briefing on the issue of whether it could receive additional evidence after the statutory time limit for exoneration had expired, and continued the matter to April 27, 2012.

At the April 27 hearing, the DA argued that because the decision not to seek extradition had been made "after the period in which relief from forfeiture of the bail could be sought had expired, . . . . [¶] . . . the Court lost jurisdiction to grant the relief requested." After hearing further argument from counsel, the court declined to admit additional evidence or testimony and announced it would issue a written order. The court filed its "Order re Motion to Vacate the Forfeiture and Exonerate Bail" on May 3, 2012. In its order, the trial court ruled Lexington "fails to establish that it satisfied all of the requirements of Penal Code § 1305[, subdivision] (g) within the time period provided by statute. Specifically, the [DA] did not make an election not to extradite defendant Languban until March 21, 2012. The jurisdictional performance period ended on February 22, 2012. The [DA's] failure to make the election within the time period does not toll the period nor does it render performance under the bond impossible. [Citations.]" On May 30, 2012, and based upon its earlier order, the trial court entered summary judgment in favor of the People in the total sum of $40,401. These consolidated appeals followed.

## II. DISCUSSION

" 'The statutory scheme governing bail forfeitures is found in Penal Code section 1305 et seq. These provisions must be carefully followed by the trial court, or its acts will be considered without or in excess of its jurisdiction. [Citation.]' [Citation.] [¶] In interpreting these statutes, we must bear in mind that ' "[t]he law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citations.] Thus, Penal Code sections 1305 and 1306 dealing with forfeiture of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture." ' " (*People v. The North River Ins. Co.* (2011) 200 Cal.App.4th 712, 717; accord, *People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485, 1489–1490; *People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 313; *People v. Accredited Surety & Casualty Co.* (2012) 209 Cal.App.4th 617, 621.) The object of bail and its forfeiture is to ensure the defendant's attendance and his or her obedience to the orders and judgment of the court, not to either provide revenue to the state or punish the surety. "Nevertheless, a

5

bail bond is a contract between the government and the surety"; "when this contract is breached, the bond should be enforced." (209 Cal.App.4th at p. 621.)

"On appeal, we review the trial court's resolution of a motion to set aside a bail forfeiture under the abuse of discretion standard [citation], subject to the protections afforded by the statutory scheme addressing bail forfeiture [citation]." (*People v. Lexington National Ins. Corp., supra,* 181 Cal.App.4th at p. 1489.) On the other hand, review of the trial court's interpretation of a statute on uncontested facts is "a pure question of law . . . subject to de novo review." (*People v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, 151.)

Importantly, the provisions of section 1305 " 'must be strictly followed or the court acts without or in excess of its jurisdiction. [Citation.]' [Citation.] 'The burden is upon the bonding company seeking to set aside the forfeiture to establish by competent evidence that its case falls within the four corners of these statutory requirements.' " (*People v. Fairmont Specialty Group, supra,* 173 Cal.App.4th at p. 152.)

Section 1305 describes a number of circumstances under which forfeiture of a bond may be set aside or vacated and the bond exonerated. (*People v. Accredited Surety & Casualty Co.* (2004) 132 Cal.App.4th 1134, 1138–1139.) Specifically, section 1305, subdivision (g), provides forfeiture of a bond may be set aside or vacated and the bond exonerated where "the criminal defendant has fled to a foreign country but is not in custody." (*People v. Western Ins. Co.* (2012) 204 Cal.App.4th 1025, 1030.) The statute provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and *the prosecuting agency elects not to seek extradition after being informed of the location of the defendant*, the court shall vacate the forfeiture and exonerate the bond . . . ." (§ 1305, subd. (g), italics added.)

Here, Lexington contends that "when the deputy district attorney prosecuting the case came to court and informed that his office elected not to extradite the defendant, the

6

trial court was under statutory compulsion to exonerate bail" because at that point all the requirements of section 1305, subdivision (g) were satisfied. The People disagree, contending the trial court properly denied Lexington relief from forfeiture under section 1305, subdivision (g) because the DA's election not to extradite occurred after the jurisdictional appearance period expired. We concur with the People on this point.

Dispositive to the issue before us is the rule that a court "lack[s] jurisdiction to vacate the forfeiture and exonerate the bond based on events that occurred after the . . . exoneration period ha[s] expired." (*People v. Seneca Ins. Co.* (2004) 116 Cal.App.4th 75, 83 (*Seneca I*).) In *Seneca I,* notice of forfeiture was mailed to the surety on August 23, 2002, informing the surety that its obligation under the bond would become absolute on February 24, 2003. On February 19, 2003, the surety moved for an order extending time to return the defendant to custody; in support of the motion the bail agent filed a declaration stating that the defendant was staying locally with her boyfriend's father. The motion was set for hearing on March 18. One day before the hearing date, surety's counsel filed a supplemental declaration stating that the defendant had been arrested and the bail agent had informed police of her whereabouts. Nevertheless, the trial court denied the motion for an extension of time. (*Id.* at p. 79.)

The appellate court affirmed the trial court's ruling. The appellate court noted "Seneca waited until the 185-day period had almost expired before filing its motion," and did not seriously begin looking for the defendant until January 2003. (*Seneca I, supra,* 116 Cal.App.4th at p. 81.) More importantly, and pertinent to the issue here, the court held "the time allowed to return the defendant to custody was not automatically extended by the mere filing of the motion. Indeed, *the court lacked jurisdiction to grant the motion based on facts occurring after the initial 185-day period had expired.*" (*Id.* at p. 82, italics added.) The court emphasized that whereas a court "retains jurisdiction to *hear* a tolling motion within 30 days after the 185-day period has expired" under section 1305, subdivision (j), "[h]ad the Legislature also intended to automatically expand the surety's time to return the defendant to custody, it would expressly have done so." (*Seneca I*, at pp. 82–83.) Accordingly, the court concluded the fact the defendant "was returned to

custody while the court still had jurisdiction to hear the motion does not entitle Seneca to relief from the order of forfeiture." (*Id.* at p. 83.)

Like the surety in *Seneca I,* Lexington was dilatory in protecting its rights. After receiving a 180-day extension of time, over and above the initial 180-day period, Lexington waited until February 21, 2012, a full year after notice of forfeiture issued, to file its motion to vacate the forfeiture. At that point, whereas the court retained jurisdiction to *hear* the motion, the court lacked jurisdiction "to vacate the forfeiture and exonerate the bond based on events that occurred after the . . . exoneration period ha[s] expired." (*Seneca I, supra,* 116 Cal.App.4th at p. 83.) Accordingly, because the DA announced the decision not to seek extradition of defendant Languban at a hearing held after the exoneration period expired on February 22, 2012, the court was without jurisdiction to vacate forfeiture and exonerate bail.[2] (*Seneca I*, at p. 83; see also *People v. Ranger Ins. Co.* (2007) 150 Cal.App.4th 638, 649–650 [concluding the trial court did not err by dismissing surety's motion to vacate forfeiture of the bond on the grounds the DA "expressed disinterest in extraditing" the defendant because the information about the DA's stance on extradition "was obtained only after the exoneration period, during which events establishing good cause must occur, had expired"]; *People v. Granite State Insurance Co.* (2003) 114 Cal.App.4th 758, 768 [where hearing on motion to vacate forfeiture is held after the exoneration period has expired, "the facts upon which the motion is based . . . must be in existence within the exoneration period"]; *People v. Ramirez* (1976) 64 Cal.App.3d 391, 401–402 [concluding that any defense asserted pursuant to § 1305 "*must not only be actually asserted but also in existence* within the 180-day period or the court loses jurisdiction" and that "the legislative intent and purpose of the extension of the hearing beyond the 180 days was not [to] extend the actual existence of the grounds beyond the 180-day period"].)

---

[2] Lexington's assertion to the contrary is based on dicta in *People v. Lexington National Ins. Corp., supra,* 181 Cal.App.4th at page 1492, which is not persuasive against the weight of authority we rely upon.

Our conclusion on this point is bolstered by *People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075 (*Seneca II*). In that case, the facts pertinent to section 1305, subdivision (g) were the defendant fled to Korea; the bail agent located the defendant and complied with the statutory identification procedures eight months before the end of the exoneration period; and the prosecutor indicated she would seek extradition but did not initiate extradition proceedings within the bond exoneration period. (*Seneca II*, at p. 1081.) On these facts, the appellate court in *Seneca II* rejected the surety's contention that the People, "by not pursuing extradition in a timely fashion after being notified of defendant's location in Korea, effectively 'elect[ed] not to seek extradition' under section 1305, subdivision (g)." (*Ibid.*) After reviewing the statutory scheme, the court concluded it did not authorize "additional extensions or tolling of the bond exoneration period in the circumstances presented. Seneca already received its one-time extension of 180 days authorized by section 1305.4 and Seneca did not qualify for statutory tolling under section 1305, subdivision (e)." (*Id.* at p. 1082.) The court acknowledged "a prosecutor could abuse what might be characterized as a 'loophole' in section 1305, subdivision (g) (e.g., pretend to 'elect' extradition, then abandon such 'election' after the bond exoneration period; prosecutors could even have their cake and eat it too by intentionally delaying the initiation of extradition of defendants beyond the exoneration period)," but noted the record revealed "no evidence of actual bad faith" on the part of prosecutor. (*Id.* at pp. 1082–1083.)

Similarly, in this case, Lexington received its one-time extension of 180 days authorized by section 1305.4, and avers that after informing the DA's office of defendant Languban's location in January 2012, was advised on February 8, 2012 the DA was still evaluating the case for extradition. Despite the looming deadline of February 22, 2012, Lexington took no further action to ascertain the DA's intent regarding extradition; subsequently, the DA announced at the hearing on held on March 21, 2012, that the underlying criminal case was "very complex" and his office was not going to seek defendant Languban's extradition at that time. Just as the *Seneca II* court declined to infer the DA elected *not* to seek extradition because the DA failed to initiate extradition

9

proceedings within the exoneration period, we similarly decline to infer the DA elected *not* to seek extradition because the DA was still in the process of evaluating extradition when the exoneration period expired.  (*Cf. Seneca II, supra*, 189 Cal.App.4th at p. 1082.) Further, as in *Seneca II*, there is no evidence in the record the DA acted in bad faith in reaching the decision not to extradite after expiry of the exoneration period; nor, tellingly, is there any evidence Lexington took any steps to push for a decision prior to expiry of the exoneration period.  (*Cf. People v. Ranger Ins. Co.* (2000) 81 Cal.App.4th 676, 682 [stating that the provisions under § 1305.4 for seeking an extension of time do not give "a surety carte blanche to sit on its hands for six months and then come running into court at the last minute"].)

Lexington also contends, however, that the trial court failed to timely declare a forfeiture after defendant Languban failed to appear on February 3, 2011.  We acknowledge Lexington may raise a contention for the first time on appeal where it essentially involves a question of law on undisputed facts.  (See *People v. Lexington National Ins. Corp., supra,* 181 Cal.App.4th at pp. 1491–1492.)  Even so, the contention is baseless because, as recited above, the record clearly demonstrates defendant Languban was present in court on February 3, 2011, at which time her counsel waived formal filing of an amended complaint and she entered not guilty pleas as to each count and denied any and all allegations.  In light of the record evidence of defendant Languban's appearance on February 3, 2011, as reflected in the clerk's minutes, Lexington's reliance on DA Patel's garbled recitation of the facts in the People's motion for a holding order is entirely unavailing.

### III. DISPOSITION

The judgment is affirmed.  The People are awarded costs on appeal.

10

_____
                                          Dondero, J.

We concur:


_____
Margulies, Acting P.J.


_____
Sepulveda, J.[*]

_____

[*] Retired Associate Justice of the Court of Appeal, First Appellate District assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11