[No. A094022. First Dist., Div. Four. Nov. 6, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
FAR WEST INSURANCE COMPANY, Defendant and Appellant.

**COUNSEL**

Brendan Pegg for Defendant and Appellant.

Richard E. Winnie, County Counsel, and E. Crystal Porter, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**SEPULVEDA, J.**—On April 6, 2000, Raymond Young, the defendant in the criminal prosecution underlying this bail forfeiture proceeding, was arrested

by Oakland police and charged with multiple violent crimes, including armed robbery. Following arraignment, Young was admitted to bail in the amount of $45,000. He made bail by posting the required bond through the offices of appellant, Far West Insurance Company, as surety. Young failed to appear as required at a May 19 hearing and, after issuing a bench warrant for his arrest, the trial court ordered bail forfeited. By the following August, agents of appellant surety had located Young in Dougherty County, Georgia. Before apprehending him, the surety's agent on the scene telephoned the Oakland Police Department and asked Sergeant Joe Carranza whether the Alameda County warrant for Young's arrest was "still active." After Carranza confirmed that it was and that Young "was a dangerous criminal [who had been] apprehended by an Oakland S.W.A.T. team" and would "definitely [be] extradite[d]," the agent got in touch with Dougherty County Sheriff's deputies who arrested Young on the California armed robbery charges and warrant.

After Young was taken into custody by Georgia sheriff's deputies, teletype, facsimile, and telephone communications were exchanged between the Dougherty County Sheriff's Office and the surety's agent in Georgia, and the Oakland Police Department. According to declarations made a part of the record, Dougherty County law enforcement officials confirmed to the Oakland Police Department that they held Raymond Young in custody on "Alameda County . . . warrant number 455406B, case number 455406-B." In a teletype marked "Urgent! Please respond within 10 minutes," and sent on August 16, 2000, they asked the Oakland police whether "the above subject is wanted by your agency [and] if so, [will] your agency . . . extradite." In reply to this query, Oakland teletyped a request to the Dougherty County Sheriff that he "release [the] hold" on Young. The sheriff complied. Young was released.

In a follow-up investigation detailed in another declaration filed with the superior court, the surety's agent visited Oakland Police Department headquarters following his return from Albany, Georgia. There, he spoke with Carl Travers of the department's warrants section. Following a review of the department's files on Young, the agent spoke with Perris Coleman, the assistant district attorney assigned the prosecution of Young's case. Coleman advised "that neither he nor anyone in his department was notified of [Young's] arrest [in Albany]. He referred me to the officer in charge of the Warrants Section." After attempting without success to reach that officer, the agent spoke with the assistant county counsel handling the surety's bail exoneration motion to advise her of the teletype information. According to the investigator, however, county counsel "was not interested in the documentation because she had already drafted her opposition. She did not wish to meet with me or view the documents I had obtained."

As indicated, following Young's release, appellant filed a motion in the Alameda County Superior Court seeking vacatur of the bail forfeiture order and to have bail exonerated. County counsel opposed the requested relief on multiple grounds. Following a hearing, the trial court entered a brief memorandum order denying appellant surety any relief. This appeal timely followed.

## ANALYSIS

■ In its memorandum order denying the motion to vacate forfeiture and exonerate bail, the trial court reasoned that, under the bail forfeiture statute, "the prosecuting agency must be given an opportunity to extradite the defendant. That did not occur here. Any communications by the bail [surety] or by Georgia authorities with the Oakland Police Department are not sufficient to satisfy the statutory requirement that the 'prosecuting agency' elect not to seek extradition." The county presses that ground here, together with the other defenses raised below. For the reasons that follow, we vacate the forfeiture order and direct that bail be exonerated.

The controlling statute, relevant portions of which are set out in the footnote below, is section 1305, the bail forfeiture provision of the Penal Code.[1] The legal argument in the motion papers filed in the trial court and in the briefs filed here centers on the question of which subdivision of section 1305 is applicable to these circumstances and what result follows from that determination. Respondent county argues subdivision (g) is controlling and that appellant failed to comply with that provision's "jurisdictional" prescriptions. Appellant surety counters with the claim that subdivision (c)(3) of section 1305 is the provision in point and that it complied with all of the requirements prescribed therein; alternatively, it contends subdivision (f) governs. As will appear, while we reject appellant's position that subdivision (c)(3) governs, we also conclude we need not determine whether the applicable provision is subdivision (f) or (g).

■ "The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court. In

---

[1]Subdivision (c)(3): "If, outside the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case within the 180-day period, the court shall vacate the forfeiture and exonerate the bail." Subdivision (f): "In all cases where a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just . . . ." Subdivision (g): "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by the law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just . . . ."

matters of this kind there should be no element of revenue to the state nor punishment of the surety. [Citation.]" (*People v. Wilcox* (1960) 53 Cal.2d 651, 656-657 [2 Cal.Rptr. 754, 349 P.2d 522, 78 A.L.R.2d 1174].) Following the Anglo-American legal maxim that "equity abhors a forfeiture," the law "traditionally disfavors forfeitures and statutes imposing them are to be strictly construed. [Citation.]" (*People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906 [98 Cal.Rptr. 57, 489 P.2d 1385].) This rule applies to the forfeiture of surety bonds. (*People v. Surety Ins. Co.* (1982) 136 Cal.App.3d 556, 561 [186 Cal.Rptr. 385] ["The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citations.]"].) The other canon of legal interpretation pertinent here is the rule prescribing the commonsense construction of statutes so as to avoid absurd results. (See, e.g., *People v. Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302, 1307 [12 Cal.Rptr.2d 343] ["We must accord [the bail statute] a reasonable, commonsense construction in line with its apparent purpose, in order to advance wise legislative policy and avoid absurdity"]; *People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1384 [59 Cal.Rptr.2d 777] ["[T]he principle [is] that these Penal Code sections must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture. . . . [¶] . . . 'Nor will we blindly follow the literal meaning of every word if to do so would frustrate the legislative purpose of those words. As another court has said in interpreting the same section: ". . . a statute will not be given an interpretation in conflict with its clear purpose, and general words used therein will be given a restricted meaning when reason and justice require it, rather than a literal meaning which would lead to an unjust and absurd consequence." ' " (Italics omitted.)].)

As we read it, the statutory bail forfeiture scheme can be parsed as a series of contemplated possibilities, defined in terms of the defendant's location vis-à-vis the jurisdiction of the superior court that set bail. Thus, if a criminal defendant has "skipped" bail and is later apprehended in the same county, bail is exonerated. (Pen. Code, § 1305, subd. (c)(2).) However, "[i]n all cases" where the defendant "is beyond the jurisdiction of the court" when apprehended, and extradition is *not* sought by the "prosecuting authority," bail is exonerated. (*Id.*, subd. (f).) We think this provision—subdivision (f)—contemplates the defendant being apprehended outside of California, either in another state or a foreign country, since the term "extradition" connotes just such a situation. In legal parlance, a criminal defendant awaiting trial and confined in another county within the state is not "extradited," he is "transferred" to the original venue for trial. Subdivision (f), then, would apply "in all cases" where the defendant is apprehended, is subject to extradition, and extradition is declined by the prosecutor. Finally, in cases where a defendant is "in another state" and is "temporarily detained" by a bondsman or agent "in the presence of local law enforcement,"

and extradition is declined by the prosecuting authority, bail is exonerated. (*Id.*, subd. (g).)

Applying this hierarchy of possibilities to the facts here, the threshold question to be answered is why Young was arrested by Georgia sheriff's deputies. Was it the "temporary detention by the bail agent," described in Penal Code section 1305 subdivision (g) or was it an arrest on the California charges, the situation implicitly contemplated by subdivision (f)? We conclude that, although we are unable to answer that question with any confidence on this record, an answer is not necessary to our resolution of the appeal. Subdivisions (f) and (g) are identical except for the "temporary detention" language appearing in the latter provision. In all other substantive respects, the two subdivisions are the same. Thus, to decide whether the trial court was correct in denying the motion to vacate forfeiture and exonerate the bond, the only question we must resolve is the one on which the trial court rested its ruling—whether the fact that the "prosecuting authority," the Office of the Alameda County District Attorney, was never advised by the surety, Georgia officers, or the warrants section of the Oakland Police Department, that Young was in custody and subject to extradition on the California warrant, is fatal to the surety's motion for relief from the order of forfeiture.

We conclude it was not. In our view, the result reached by the trial court on these facts is at odds with the purposes underlying the statutory bail scheme and contrary to the ancient equitable principle that forfeitures are abhorrent. As for the variance between the statutory command (that the "prosecuting authority" decide not to pursue extradition proceedings) and what occurred here, critical to the trial court's ruling, it is preferable to rest the outcome on principles of equity rather than to embrace a result that can fairly be termed "absurd." (*People v. Ranger Ins. Co., supra,* 51 Cal.App.4th at p. 1384.)

In several of the (surprisingly many) reported bail forfeiture cases, clerical and like errors by county employees in mail and other communications relating to bail and extradition were held sufficient to require vacatur of the forfeiture order. The results in these cases are grounded in principles of equity and a commonsense, practical construction of the bail forfeiture statute. (See, e.g., *People v. Ranger Ins. Co., supra,* 9 Cal.App.4th 1302, 1307 [reversing forfeiture order because of defect in county clerk's notice]; *County of San Bernardino v. Ranger Ins. Co.* (1995) 34 Cal.App.4th 1140 [41 Cal.Rptr.2d 57] [reversing forfeiture order on equitable principles]; *People v. North Beach Bonding* (1974) 36 Cal.App.3d 663, 675 [111 Cal.Rptr. 757] [reversing forfeiture order and stating, "Where there is a breach of the [surety's] obligation, the bail should be enforced. When the nonappearance

is not one which the bail was required to or did cover, it would penalize the surety unwarrantably to permit recovery on the undertaking. Forfeitures are disfavored and statutes imposing them are to be strictly construed."]; *People v. Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216, 220 [119 Cal.Rptr. 917] [reversing forfeiture order where county clerk failed to mail notice of forfeiture to correct address; "since the law disfavors forfeitures and statutes imposing them, such as this one [(Pen. Code, § 1305)], the statute must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture"]; *People v. Surety Ins. Co., supra,* 136 Cal.App.3d 556 [reversing forfeiture where county clerk failed to check records showing surety's revocation of agent's authority]; *People v. Ranger Ins. Co., supra,* 51 Cal.App.4th at p. 1384 [reversing forfeiture where county clerk mailed notice of forfeiture to wrong address]; *People v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 812, 819 [71 Cal.Rptr.2d 806] ["If the surety is unable to secure the defendant's attendance due to his detention by a foreign government, and the People are unwilling to take the official steps necessary to obtain the defendant's return, the surety has been effectively precluded by other parties (the People and the foreign government) from fulfilling its promise to bring the defendant before the court."].) While not on all fours with those cases, the facts here are not so dissimilar that the underlying principles have no application.

The county's defense is founded on a technical reading of the statute, on the one hand, while the surety's conduct was in line with its obligations under the bond and, under these circumstances, not unreasonable. We observe, for example, that the National Crime Information Center (NCIC) form notice and warrant regarding Young, faxed by the Oakland Police Department to other law enforcement agencies nationally through the NCIC program, advises the recipient, "[D]o not attempt to arrest; contact *sender* for instructions." (Italics added.) The county's position in this litigation appears to be that, even though the surety tracked Young to Georgia, confirmed his wanted status and identity with the Oakland police and notified local authorities, who arrested Young, the police department's error in failing to notify the prosecutorial arm of the *same* government that Young had been apprehended in Georgia and authorities there were asking if his extradition would be pursued, means the surety must forfeit $45,000.

We think not. The crux of the case, as we see it, is not so much whether under principles of the law of agency the Oakland Police Department is an arm of the local prosecutor, such that notice to the police is notice to the prosecutor for bail and custody purposes. Rather, it is whether, an error having occurred that led to the release of a dangerous felon wanted by Alameda County authorities on armed robbery charges and the surety having done everything required of it under the statute and bond, who, as between

the surety and the county, must bear the consequences of the error.[2] In our view, the county's position—and the result reached by the trial court—is at odds with the policy underlying the bail forfeiture scheme. That policy places substantial risks and burdens on the surety, burdens that, if not discharged, may lead to forfeiture under Penal Code section 1305. But bail is also both a form of contract and an arrangement to be encouraged in defined circumstances.

We need not attempt to formulate a broad legal rule illustrated by the facts of this case. It is enough to conclude that under the circumstances shown here—a California fugitive admitted to bail, apprehended and held in custody in another state, is released as a result of errors committed solely by officials of the demanding county government and the surety has done all that is required of it under the terms of the bond—bail is exonerated. (*People v. Ranger Ins. Co., supra*, 51 Cal.App.4th at p. 1384; *People v. North Beach Bonding Co., supra*, 36 Cal.App.3d at p. 675 and cases cited.) ▆▆▆ In sum, we think that if the order before us were affirmed, it would discourage sureties from undertaking to underwrite bail bonds, contrary to the evident policy of the Legislature as expressed in the statutory scheme.[3]

### DISPOSITION

The order of forfeiture appealed from is vacated; bail is ordered exonerated.

Reardon, Acting P. J., and Kay, J., concurred.

A petition for a rehearing was denied December 5, 2001, and the opinion was modified to read as printed above.

---

[2]In point of fact, any "loss" at risk is only to the surety and its bond in the penal sum of $45,000; the county risks only the loss of the opportunity to reap the forfeiture.

[3]In its petition seeking rehearing, the county contended all of the evidence before the trial court—consisting of declarations signed by agents of the surety recounting events in Georgia and Oakland—is inadmissible hearsay and cannot support relief from forfeiture. We are not persuaded. The trial court did not rule on the county's evidentiary objections, making its ruling on the assumption the declarations were admissible, and concluding that under the bail forfeiture scheme, relief was unavailable as a matter of law. In light of those circumstances, the rule announced in *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, footnote 1 [25 Cal.Rptr.2d 137, 863 P.2d 207] applies: "Because counsel failed to obtain rulings [in the trial court on objections to evidence], the objections are waived and are not preserved for appeal. . . . [F]or purposes of this appeal, we must view the objectionable evidence as having been admitted in evidence and therefore a part of the record."