[No. G043026. Fourth Dist., Div. Three. Oct. 28, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
SENECA INSURANCE COMPANY, Defendant and Appellant.

## Counsel

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, and Nicole M. Walsh, Deputy County Counsel, for Plaintiff and Respondent.

---

**OPINION**

**IKOLA, J.**—In this bail forfeiture action, defendant Seneca Insurance Company (Seneca) appeals the trial court's grant of summary judgment and concomitant denial of Seneca's motion to vacate forfeiture and exonerate bail or, alternatively, toll the time available for exoneration of bail. We affirm.

## FACTS

Seneca, through its bail agent, posted a bail bond in the amount of $100,000 to secure the release of criminal defendant Dong Suk Kim on March 20, 2008. Kim failed to appear for his arraignment on September 9, 2008, and the court ordered bail forfeited in open court. Notice of forfeiture of bail bond was mailed to Seneca and the bail agent on September 10, 2008. The notice indicated: "Pursuant to Penal Code [section] 1305, the forfeiture will become final 186 days from the date of mailing of this notice unless, before that date, you obtain a court order setting aside such forfeiture, or the statute is tolled."[1]

An April 2, 2009 minute order stated in relevant part: "Motion by Seneca . . . to extend time (for forfeiture) on bond pursuant to . . . Section 1305.4 was read and considered . . . ." "Motion granted." "Court orders 180 days bail bond forfeiture period extended to 10/02/2009 for bond [at issue]."

The April 2, 2009 minute order stated Kim was in Korea. In a declaration filed with Seneca's motion, Seneca's bail agent declared his investigation determined Kim departed the United States for Korea on September 4, 2008; Kim told the bail agent by phone on October 22, 2008, that Kim did not intend to return to the United States; the bail agent flew to Korea on December 29, 2008; the bail agent brought Kim to the police department in Daejeon Dunsan, South Korea, on January 3, 2009; and the bail agent documented Kim's identity at the police station with a passport, photograph, and fingerprints. The bail agent submitted with his declaration a notarized certificate from a peace officer in Korea who confirmed the bail agent brought Kim "to the briefing room at the police station . . . ."

On October 1, 2009, Seneca moved to vacate forfeiture and exonerate bail, or, alternatively, toll the statutory deadline for exoneration of bail. Seneca represented in its motion that the People had previously indicated they would

---

[1] All statutory references are to the Penal Code.

pursue the extradition of defendant, but had not done so yet. The People opposed the motion; in their written opposition, the People noted the lack of written evidence of an extradition election by the prosecutor (i.e., "there is no documentation that . . . the Orange County District Attorney's Office . . . elected to extradite [Kim]"). At the hearing, according to the minute order, "counsel" stipulated to the following: "District Attorney's office informed on 11/13/08 in writing of [Kim]'s whereabouts in South Korea. In January 2009, District Attorney's office given temporary detention by bail agent in South Korea and currently electing to pursue extradition. District Attorney's office to file application regarding warrant." The court denied Seneca's motion to vacate forfeiture and exonerate bail, or to allow equitable tolling of the exoneration period.

The court entered summary judgment on the bail bond on November 9, 2009. Seneca appealed.

## DISCUSSION

*Bail Forfeiture Statutory Framework*

■ If a criminal defendant fails to appear in court when lawfully required to do so, the court must declare bail forfeited. (§ 1305, subd. (a).) For any bond exceeding $400, the clerk must mail notice of forfeiture; the surety then has 185 days (including five days added to the standard 180-day period for mailing of the notice) to secure the presence of the criminal defendant in court. (See § 1305, subds. (b)–(c).) "If the defendant appears . . . within 180 days of the date of forfeiture . . . the court shall, on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered, direct the order of forfeiture to be vacated and the bond exonerated." (§ 1305, subd. (c)(1).)

■ As occurred here, the surety insurer may move, "based upon good cause," for an extension of up to 180 additional days. (§ 1305.4.) Thus, logically (although not explicitly stated in the statute), the appearance of the criminal defendant within the extended period authorized by section 1305.4 requires the forfeiture to be vacated and the bond to be exonerated. The statutory scheme does not explicitly authorize additional *extensions* of the 180-day bond exoneration period.

There is one way to *toll* the bond exoneration period pursuant to statute. Section 1305, subdivision (e), requires the "tolling of the 180-day period

provided in this section during the period of temporary disability, provided that it appears to the satisfaction of the court that the following conditions are met: [¶] (1) The defendant is temporarily disabled by reason of illness, insanity, or detention by military or civil authorities. [¶] (2) Based upon the temporary disability, the defendant is unable to appear in court during the remainder of the 180-day period. [¶] (3) The absence of the defendant is without the connivance of the bail. [¶] The period of the tolling shall be extended for a reasonable period of time, at the discretion of the court, after the cessation of the disability to allow for the return of the defendant to the jurisdiction of the court." But there has been no contention at trial or on appeal that defendant is "temporarily disabled" as defined by section 1305, subdivision (e).

"When any bond is forfeited and the period of time specified in Section 1305 has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture, regardless of the amount of the bail, shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound. The judgment shall be the amount of the bond plus costs, and notwithstanding any other law, no penalty assessments shall be levied or added to the judgment." (§ 1306, subd. (a).) Conversely, "[i]f a court grants relief from bail forfeiture, it shall impose a monetary payment as a condition of relief to compensate the people for the costs of returning a defendant to custody pursuant to Section 1305, except for cases where the court determines that in the best interest of justice no costs should be imposed. The amount imposed shall reflect the actual costs of returning the defendant to custody." (§ 1306, subd. (b).)

*Interpretation of Section 1305, Subdivision (g)*

The parties rightly agree section 1305, subdivision (g), is applicable to the factual circumstance presented here—a criminal defendant who has fled the jurisdiction to a foreign country but is not in custody. "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the *prosecuting agency elects not to seek extradition after being informed of the location of the defendant,* the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (§ 1305, subd. (g), italics added.)

The facts pertinent to section 1305, subdivision (g), are not in dispute—defendant fled to Korea; the bail agent tracked down defendant; the bail agent complied in January 2009 with the identification procedures set forth in section 1305, subdivision (g), more than eight months before the end of the bond exoneration period;[2] the prosecutor indicated soon thereafter she would seek extradition; and there is no evidence the extradition process was actually initiated by the end of the bond exoneration period (Oct. 2, 2009).

The question presented by the parties is primarily one of statutory interpretation. Seneca asserts the People, by not pursuing extradition in a timely fashion after being notified of defendant's location in Korea, effectively "elect[ed] not to seek extradition" under section 1305, subdivision (g). The People counter that they never elected not to seek extradition; indeed, the record indicates the district attorney's office stated in January 2009 that it would seek extradition. According to the People, a period of delay does not constitute an election "not to seek extradition" under section 1305, subdivision (g). In response to this line of argument, Seneca posits that if delay does not vitiate an election to extradite under the statute, the court should at least be required to toll the exoneration period to allow for exoneration of the bond once extradition is completed.

■ We interpret section 1305 de novo, paying heed to its plain language. ■ (*People v. Lexington National Ins. Co.* (2007) 158 Cal.App.4th 370, 374 & fn. 4 [69 Cal.Rptr.3d 738].) At the same time, it is "well settled that the law disfavors forfeitures, and that this disfavor extends to the forfeiture of bail." (*People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485, 1489 [105 Cal.Rptr.3d 469].) " 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court. In matters of this kind there should be no element of revenue to the state nor punishment of the surety.' " (*People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791, 794–795 [113 Cal.Rptr.2d 448] (*Far West*).)

■ There is no case directly on point. It is clear that if a criminal defendant flees to a jurisdiction that will *not* extradite individuals to California, section 1305, subdivision (g), does not require vacation of the forfeiture and exoneration of the bond merely because the government does not actively try to extradite the defendant. "When extradition is not feasible, there can be no meaningful election whether to seek extradition, and the conditions for

---

[2] It appears the document signed by the Korean peace officer may not be "an affidavit signed under penalty of perjury" as required by the statute. But as the parties ignore this potential issue, we shall as well.

forfeiture relief have not been satisfied." (*County of Orange v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 795, 802–803 [71 Cal.Rptr.2d 811] [denial of motion to vacate forfeiture order proper where attempt at extradition would be futile].) But there is no contention here that seeking extradition from South Korea would be a futile act.

Seneca relies on *Far West, supra,* 93 Cal.App.4th 791, as support for its position. In *Far West,* a criminal defendant failed to appear at a hearing and fled to the State of Georgia. (*Id.* at p. 793.) The surety found the defendant and had him taken into custody by sheriff's deputies in Georgia; the Oakland, California, Police Department was informed of the circumstances. (*Ibid.*) The *Far West* court, reversing the summary judgment entered by the trial court, concluded "under the circumstances shown here—a California fugitive admitted to bail, apprehended and held in custody in another state, is released as a result of errors committed solely by officials of the demanding county government and the surety has done all that is required of it under the terms of the bond—bail is exonerated." (*Id.* at p. 798.) Although the *Far West* court indicated its decision would be the same regardless of whether subdivision (f) or subdivision (g) of section 1305 applied to the factual scenario presented (*Far West,* at p. 796), a key aspect of *Far West* was that the criminal defendant was in custody for extradition to California until the Oakland authorities committed errors resulting in his release.

■ Having reviewed the statutory scheme and pertinent cases, we conclude the People put forth the correct interpretation of the text of section 1305, subdivision (g). A bail bond is not exonerated simply because the People have not completed (or even initiated) extradition of the defendant before the end of the bond exoneration period. In the case of an out-of-custody criminal defendant who flees to a foreign jurisdiction and is identified by the bail agent in compliance with section 1305, subdivision (g), the bond is exonerated if the criminal defendant is returned to the court within the bond exoneration period (§ 1305, subd. (c)) or the prosecutor elects not to extradite (§ 1305, subd. (g)). Otherwise, judgment must be entered in the amount of the bond. (§ 1306, subd. (a).) The statutory scheme does not authorize additional extensions or tolling of the bond exoneration period in the circumstances presented. Seneca already received its one-time extension of 180 days authorized by section 1305.4 and Seneca did not qualify for statutory tolling under section 1305, subdivision (e).

Seneca's interpretation of the statute has the advantage of comporting with one aspect of public policy, i.e., avoiding forfeitures of bail bonds. We agree with Seneca that a prosecutor could abuse what might be characterized as a "loophole" in section 1305, subdivision (g) (e.g., pretend to "elect" extradition, then abandon such "election" after the bond exoneration period; prosecutors could even have their cake and eat it too by intentionally delaying the

initiation of extradition of defendants beyond the exoneration period). (Cf. *People v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, 154–155 [92 Cal.Rptr.3d 516] [noting in different factual context that "[a]n interpretation of section 1305 . . . permitting a bail forfeiture to stand under the circumstances presented here would create a financial disincentive to enforcing warrants and bringing criminal defendants to justice, and would undermine the Legislature's carefully constructed statutory scheme"].)

But there is no evidence of actual bad faith in the sparse record provided to this court.[3] Nothing in the record suggests the prosecutor's management of the extradition process consisted of an effort to obtain summary judgment against Seneca. Further, nothing in the record guarantees Kim would have been returned to California before the end of the bail exoneration period if the extradition process had begun promptly in January 2009, or that Kim would have been under a "temporary disability" entitling Seneca to tolling of the exoneration period as set forth in section 1305, subdivision (e), had extradition proceedings been conducted sooner.

■ More fundamentally, the language of the relevant statutory scheme simply does not support Seneca's position. Exoneration of the bond is contingent on the return of the criminal defendant to face justice in California, not the initiation of the extradition process. We are loath to impose nonstatutory deadlines on prosecutors to initiate the process of extradition or to otherwise require prosecutors to pursue extraditions on a particular timetable.

■ Other than cases in which the criminal defendant is under a "temporary disability" (§ 1305, subd. (e)), the statutory scheme creates a clear deadline for the period of exoneration. Seneca's "arguments would be better addressed to the Legislature. We note, in any event, that the existing statutory scheme has been designed to avoid undue hardship for bail sureties. A surety undertakes to guarantee the defendant's timely appearance in court. If the defendant fails to appear, the surety is contractually obligated to the government in the amount of its bond." (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 313 [110 Cal.Rptr.3d 4, 231 P.3d 909].)[4]

---

[3] Seneca did not provide a reporter's transcript of any of the pertinent hearings in this case and the documents in the clerk's transcript provide limited information with regard to the precise nature of the delay in extradition.

[4] Both parties explain in their briefs that an amendment to section 1305, subdivision (g), almost became law (it was vetoed) in 2008; such amendment (had it been enacted into law) may have affected the result in this case. We have not considered this failed amendment in our interpretation of the statute as it exists.

## DISPOSITION

The judgment is affirmed. The People are awarded costs on appeal.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 16, 2011, S188573. Kennard, J., was of the opinion that the petition should be granted.