Filed 7/9/14  P. v. Internat. Fidelity Ins. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>INTERNATIONAL FIDELITY INSURANCE COMPANY,<br><br>Defendant and Appellant. | F067198<br><br>(Super. Ct. No. F11903487)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

E. Alan Nunez for Defendant and Appellant.

Kevin B. Briggs, County Counsel, and Evan A. Merat, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P.J., Gomes, J. and Kane, J.

We hold that a forfeited bail bond may not be exonerated under Penal Code[1] section 1305, subdivision (f), where the California county prosecuting agency was never informed of the arrestee's out-of-state custody and where his release was due to the actions of California State Parole. We therefore affirm the summary judgment denying the motion of International Fidelity Insurance Company (International) to vacate its bond forfeiture and exonerate its bail bond.

## PROCEDURAL HISTORY

Jonathan McDowell was arrested for felony hit and run and misdemeanor resisting arrest in Fresno County. International, through bail bond agency Lucky Bail Bonds (Lucky), posted a $140,000 bail to secure the release of McDowell.

On August 16, 2012, McDowell failed to appear in court, and the court ordered the bond forfeited and issued a bench warrant. Notice of forfeiture was mailed to International and Lucky on the same day. On February 11, 2013, International timely filed a motion to vacate forfeiture and exonerate bail pursuant to section 1305. The People filed an opposition. On March 22, 2013, the court issued a ruling denying the motion. Summary judgment was entered on the forfeiture on April 4, 2013. (§ 1306.) International and Lucky filed a timely appeal on April 16, 2013.

## FACTS

After receiving the bail forfeiture notice, Lucky began an investigation to discover McDowell's whereabouts. Barry Pearlstein, owner of Lucky, contacted Ernie Muro of the California Department of Corrections and Rehabilitation (CDCR), who referred him to Parole Agent Ron Ladd, defendant's parole officer. Ladd showed little interest in the case and stated he did not have time to look for McDowell. Subsequently it was discovered that McDowell was in Pasco, Washington. Pearlstein contacted Agent Rick Shaw of the United States Department of Justice, to whom he forwarded a copy of his

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

investigation file. Shaw then forwarded the information to the United States Marshals' office.

On or about November 25, 2012, McDowell was arrested by the United States Marshal. On November 28, 2012, he was booked into the Benton County Jail in Kennewick, Washington. A declaration signed by a clerk at the Benton County Jail indicates that McDowell was arrested on the Fresno County warrant. Pearlstein contacted Ladd and Muro after the arrest. Ladd and Muro indicated there was a process for returning McDowell to Fresno, but they were unsure of the timeline and exactly how the process would work. According to Pearlstein, Ladd did not seem to take a strong interest in the case or securing McDowell's return from Washington.

On December 12, 2012, Pearlstein was notified that McDowell was released from custody in Washington because the parole agent and the California State Parole Board chose to discharge him rather than have him returned to California for adjudication. There is no indication in the record that the Fresno County District Attorney's Office or any other Fresno County law enforcement agency was ever notified that McDowell was in custody in Washington.

## DISCUSSION

### I. Standard of Review

Appellate courts ordinarily review an order denying a motion to vacate the forfeiture of a bail bond under an abuse of discretion standard. (*People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1, 5.) However, when the facts are undisputed and the court is only deciding legal issues, appellate courts apply an independent standard of review. (*People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 592.)

Here, the pertinent facts are not in dispute and the only issue is a matter of law.[2] Therefore, we will conduct an independent review.

## II.     Analysis

Section 1305, subdivision (f) provides:

> "In all cases where a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

The surety has the burden of establishing that the case falls within the statutory requirements to avoid forfeiture. (*People v. Ramirez* (1976) 64 Cal.App.3d 391, 398; *County of Los Angeles v. Fairmont Specialty Group* (2008) 164 Cal.App.4th 1018, 1027.)

International argues that the parole officer's authorization of release was sufficient to satisfy the requirements of the statute, citing *People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791 (*Far West*). We find *Far West's* facts easily distinguishable from the instant case. Furthermore, a California parole officer cannot be considered the "prosecuting agency" under section 1305, subdivision (f).

In *Far West*, the surety's agent contacted the Oakland Police Department, who had issued an arrest warrant for a defendant. The Oakland Police Department verified the warrant was still active and advised that the defendant was a dangerous criminal and would be extradited. The agent then had the defendant arrested by Georgia authorities. When the Georgia authorities inquired of the Oakland Police Department whether the defendant was still wanted and whether they intended to extradite him, the police department requested that he be released and he was released. The district attorney's

---

[2]     The People argue that the declaration of the Washington Police Department is inadmissible. However, the objection to the evidence was not raised at trial and is therefore forfeited on appeal. (Evid. Code, § 353.)

4.

office in Oakland was not informed of these facts before the defendant was released. (*Far West*, *supra*, 93 Cal.App.4th at p. 793.)

In applying section 1305, subdivision (f), the court in *Far West* found that the bail must be exonerated because the defendant was released based on errors by "officials of the demanding county government" (Oakland Police Department). (*Far West*, *supra*, 93 Cal.App.4th at p. 798.) The court declined to create a broad legal rule, but held that the bond should be exonerated under the specific circumstances of the case. (*Ibid.*) The court's opinion concluded:

> "We need not attempt to formulate a broad legal rule illustrated by the facts of this case. It is enough to conclude that under the circumstances shown here—a California fugitive admitted to bail, apprehended and held in custody in another state, is released as a result of errors committed solely by officials of the demanding county government and the surety has done all that is required of it under the terms of the bond—bail is exonerated. (*People v. Ranger Ins. Co.* [(1996)] 51 Cal.App.4th [1379,] 1384; *People v. North Beach Bonding Co.* [(1974)] 36 Cal.App.3d [ 663,] 675 and cases cited.) In sum, we think that if the order before us were affirmed, it would discourage sureties from undertaking to underwrite bail bonds, contrary to the evident policy of the Legislature as expressed in the statutory scheme." (*Far West*, *supra*, 93 Cal.App.4th at p. 798, fn. omitted.)

*Far West's* narrow holding was expressly limited to its facts. Among the facts the court found significant was that the arrestee's release resulted from errors committed solely by the county that sought his return. No such facts are alleged here. McDowell's release had nothing to do with the acts or omissions of Fresno County. His release resulted from the actions of state parole agents.

*Far West* emphasized that the surety "has done all that is required of it under the terms of the bond …." (*Far West*, *supra*, 93 Cal.App.4th at p. 798.) Such is not true of Lucky and Fidelity. The record is devoid of any evidence that Lucky, Fidelity or anyone else notified, or attempted to notify, any Fresno County law enforcement agency, including the Fresno County District Attorney's Office, that McDowell was in custody in Washington. Lucky and Fidelity had the opportunity to inform Fresno County of

5.

McDowell's custody status in Washington but did not do so during the 17-day period McDowell was incarcerated in Kennewick, Washington. Thus, it cannot be said that the surety did all that was required of it.

International asserts that *Far West* should be extended to include state parole agents within the definition of "prosecuting agency." We disagree. International overlooks the important distinction that state parole is an agency of the state, and not a local law enforcement agency. State parole operates through its own administration, the Board of Parole Hearings, and does not take part in local prosecution. (See §§ 5077, 5077.1.) Additionally, parole officers become involved after a defendant is convicted. Unlike the police department in *Far West*, a parole agent is not an "official[] of the demanding county government" (*Far West*, *supra*, 93 Cal.App.4th at p. 798) and, therefore, does not fall within section 1305, subdivision (f), as the "prosecuting agency."

Furthermore, a broad interpretation of section 1305 is contrary to the legislative intent of section 1305. While we note that the law must be construed in favor of the surety in order to avoid the harsh consequences of forfeiture, there is no ambiguity in the statute. (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 307.) Additionally, section 1554.2, subdivision (a), provides that only the district attorney may seek extradition for a person who has been charged with a crime but has not yet been convicted. A parole officer can petition for extradition only when the individual has been convicted of a crime. (*Id*., subd. (b).) This distinction further demonstrates that the prosecuting agency is the district attorney because the parole agency is not involved prior to conviction. We do not believe the Legislature intended to include all possible law enforcement personnel as the "prosecuting agency." (§ 1305, subd. (f).)

*Far West's* concern that affirming the order denying exoneration where the surety did all that was required and the prisoner's release was due solely to errors committed by the demanding county is not applicable here, where the prisoner's release resulted from the actions of *state* parole and not the prosecuting agency of Fresno County.

Lastly, International argues that the bond must be exonerated because the surety's performance was rendered impossible due to actions of the state. International relies on *People v. Meyers* (1932) 215 Cal. 115 (*Meyers*). There, the defendant was arrested in Alameda County and released on bail. (*Id.* at pp. 116-117.) The defendant was subsequently arrested on a San Francisco County warrant and pled guilty. The defendant was ultimately ordered by San Francisco County to remain outside of California and, thus, failed to appear in connection with the Alameda County charges. (*Id.* at p. 117.) Suit was brought on the bond and the trial court held that the defendant bondsmen "'were prevented by operation of law from having the custody of said prisoner and that by reason thereof are exonerated from their obligation.'" (*Ibid.*) The Supreme Court affirmed, reasoning that the surety could not be held liable because performance was rendered impossible. (*Id.* at pp. 119-120.)

International asserts that *Meyers* created a broad rule of law that applies here; specifically, a broad definition of "prosecuting agency." We are not convinced. The *Meyers* opinion acknowledged the unusual circumstances of the case and is, therefore, limited to its facts. Further, *Meyers* was decided several decades before section 1305, subdivision (f) was enacted. *Meyers* does not address the issue presented here, namely, whether state agencies should be viewed as prosecuting agencies within the meaning of section 1305, subdivision (f).

In any event, performance was not rendered impossible by actions of the state. There was no court order preventing McDowell from lawfully returning to California, as was true in *Meyers*. There are no circumstances that made McDowell's return to California illegal or impossible. Rather, evidence showed that McDowell was in custody for about two weeks before he was released. During that time, International could have notified the Fresno County District Attorney's office that McDowell was in custody. Had it done so before McDowell was released, International would have been entitled to have its bond exonerated under section 1305, subdivision (f). Instead, the Fresno County

7.

District Attorney's Office was never notified that McDowell was in custody out-of-state and, therefore, was not afforded the opportunity to decide whether to seek his extradition. The statute clearly imposes as a precondition to exonerating a bond that the local prosecuting agency be informed that the suspect is in custody before he is released. The law further imposes on the surety the burden of proving that the statutory requirements for exoneration are met. International has failed to carry its burden.

## **DISPOSITION**

The judgment denying the motion to vacate bond forfeiture is affirmed. The People are awarded costs on appeal.