Filed 2/7/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>THE NORTH RIVER<br>INSURANCE COMPANY et al.,<br><br>     Defendants and<br>Appellants. | B322752<br><br>Santa Clara County<br>Super. Ct. No. F1765160 |

     APPEAL from a judgment of the Superior Court of Santa Clara County, My-Le Jacqueline Duong, Judge.  Affirmed.

     Jefferson T. Stamp for Appellants.

James R. Williams, County Counsel, Christopher A. Capozzi, Deputy County Counsel, for Plaintiff and Respondent.

———————————

In this bail forfeiture action, the North River Insurance Company and its bail agent (collectively, North River) challenge a trial court's order denying a continuance. We decided a similar case against a surety in *People v. Tingcungco* (2015) 237 Cal.App.4th 249 (*Tingcungco*). As we explained in *Tingcungco*, North River's position is contrary to the language and legislative history of Penal Code section 1305, subdivisions (g) and (h).

North River posted a bail bond on a defendant who fled California. North River chased him but found him too late to get the prosecution's decision on extradition, which is a necessary part of the statutory process. To save itself now, North River maintains legislative purpose should override, or guide, the interpretation of the words of this statute.

When construing this statute, our job indeed is to effectuate its purpose. (E.g., *Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135 (*Apple*).) "The dominant mode of statutory interpretation over the past century has been one premised on the view that legislation is a purposive act, and judges should construe statutes to execute that legislative purpose. This approach finds lineage in the sixteenth-century English decision *Heydon's Case*, which summons judges to interpret statutes in a way 'as shall suppress the *mischief*, and advance the *remedy*.' " (Katzmann, Judging Statutes (2014) p. 31, italics added.)

Here the legislative history shows the Legislature considered the purpose North River proposes but rejected this approach in favor of the current statute's wording, which is

2

inhospitable to this proposed interpretation.  The decision in *Tingcungco* explained all that.  North River does not negate or engage that analysis.  Its claim to fidelity to legislative purpose lacks a footing in text or history.

We therefore affirm.  Section citations are to the Penal Code.

I

The prosecution filed a complaint alleging Geovanni Quijadas Silva committed a lewd or lascivious act on a child by force, violence, duress, menace, and fear.  North River posted a $100,000 bond to release Silva.

The trial court declared the bond forfeited when Silva did not appear for a hearing on February 22, 2018.  The court mailed notice of the forfeiture on February 26, 2018.  The forfeiture would become final in 180 days (plus five days for mailing), on August 30, 2018, unless Silva came to court or was in custody by then.

At North River's request, the court granted two extensions for a total of 180 days from the first extension.  March 20, 2019, was the final day of this new interval.  On that final day, North River moved to vacate the forfeiture and to exonerate the bond under section 1305, subdivision (d) or (g).  In the alternative, it moved to toll time under section 1305, subdivision (e) or (h).

North River's motion included a declaration by an investigator who said he found Silva in Mexico on March 15, 2019.  The investigator temporarily detained Silva in the presence of a Mexican law enforcement officer, who positively identified Silva.  The motion had other exhibits, including Silva's Mexican identification card and fingerprints, photos of Silva and the investigator, and statements from the officer and Silva.

3

The prosecution opposed the motion because it could not make an extradition decision within the appearance period—which is to say by March 20, 2019—nor did it decline to extradite within that period. The prosecution noted that North River served the motion on the last day of the appearance period and, moreover, served it to an office where the prosecutor of record and the prosecutor who handles contested bail motions did not work. The prosecution also said the fingerprints were not usable.

In reply, North River said the prosecution violated due process by not giving notice of its extradition decision and by not saying whether it would agree to tolling. North River alternatively argued the court should toll time under section 1305, subdivision (h) or should grant a continuance under section 1305, subdivision (j).

On June 28, 2019, the court denied North River's motion. It found the matter was untimely because the prosecution had not made a decision about extradition by the end of the appearance period, March 20, 2019, and no statutory provisions required the prosecution to make a decision by then. The court also denied the alternate requests to toll the forfeiture period or to continue the matter.

On July 10, 2019, the court entered a judgment of $100,000 against North River. North River appealed. It is the sole appellant: no one who may have helped post bond is involved in this appeal.

## II

We survey law about bail and forfeiture and then show this law did not require the court to extend the appearance period.

### A

We independently review the trial court's interpretation of statutes. (*County of Los Angeles v. Financial Casualty & Surety, Inc.* (2018) 5 Cal.5th 309, 314.)

When a person for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare the bond forfeited. (§ 1305, subd. (a).)

The surety then has an appearance period either to produce the defendant or to demonstrate that other circumstances require the court to set aside the forfeiture. (§ 1305, subd. (c); *People v. United States Fire Ins. Co.* (2015) 242 Cal.App.4th 991, 1000 [this period is commonly called the "appearance period" or the "exoneration period"].) This period lasts 180 days (plus five days for mailing) from when the court mails the notice of forfeiture. (§ 1305, subd. (b).) If the surety shows good cause, the court may extend this period for up to 180 days from the date of the order granting the extension. (§ 1305.4.)

If the defendant appears during the appearance period, the court must vacate the forfeiture and exonerate the bond. (§ 1305, subd. (c)(1).) If the court does not set aside the forfeiture by the end of the appearance period, it must enter summary judgment against the surety. (§ 1306, subd. (a).)

Section 1305, subdivision (j) allows the court to hear a motion after the appearance period expires. It says, "A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court

may extend the 30-day period upon a showing of good cause." (§ 1305, subd. (j).)

Defendants skipping bail may flee California. Those defendants are bad news for their bail bond companies, but section 1305, subdivision (g) gives these companies a potential out. This section requires the court to vacate the forfeiture and to exonerate the bond—but only if two prerequisites obtain. First, the bail agent must temporarily detain the defendant in the presence of a local law enforcement officer, who must positively identify the defendant in an affidavit. (*Ibid.*) Second, and pertinent to this appeal, the prosecution must decide not to seek extradition. (*Ibid.*)

In cases arising under section 1305, subdivision (g), the court may toll the appearance period under subdivision (h). To do so, the bail agent and the prosecution must agree it will take more time to return the defendant to the court's jurisdiction, and the prosecution must agree to tolling. (*Ibid.*)

To interpret these provisions, we look first to the words of the statute and try to give effect to their ordinary meaning. (*Tingcungco, supra*, 237 Cal.App.4th at p. 253.) Generally, we strictly construe bail statutes to avoid forfeiture. (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 308 (*Lumbermens*).) The policy disfavoring forfeiture cannot, however, overcome a statute's plain meaning. (*Ibid.*) Our polestar is devotion to the statute's purpose. (*Apple, supra*, 56 Cal.4th at p. 135.)

B

The law did not require the trial court to continue the appearance period. We first address section 1305, subdivisions (g) and (h), and then turn to subdivision (j).

6

Section 1305, subdivisions (g) and (h) did not require a continuance. On similar facts, *Tingcungco* decided this issue. A defendant failed to appear, and the court ordered the bail forfeited. (*Tingcungco*, *supra*, 237 Cal.App.4th at p. 252.) Three days before the extended appearance period expired, the surety told the prosecution it found the defendant in Mexico and asked the court to toll the appearance period. The court denied the request. (*Ibid.*) Like North River, the surety in *Tingcungco* argued it had complied fully with section 1305, subdivision (g) and the prosecution's indecision about extradition should not frustrate exoneration of the bond. (*Tingcungco,* at p. 256.)

As the Court of Appeal in *Tingcungco* explained, section 1305, subdivisions (g) and (h) do not support North River's position. Subdivision (h) does not apply because the prosecution did not agree to toll the appearance period. (*Tingcungco*, *supra*, 237 Cal.App.4th at pp. 258–259.) As for subdivision (g), the surety must find the defendant "far enough in advance of the end of the 180-day appearance period to allow the prosecutor to decide whether or not to extradite." (*Tingcungco*, at pp. 258–259; cf. *People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075, 1082 [bail bond not exonerated under subd. (g) simply because prosecutor has not completed, or even initiated, extradition before end of appearance period].) North River gave less than a day's notice. This was insufficient. North River did not satisfy subdivision (g) or (h).

The Court of Appeal in *Tingcungco* also examined legislative history that contradicts North River's interpretation. (*Tingcungco*, *supra*, 237 Cal.App.4th at pp. 255–258.) The Legislature considered an amendment in 2012 that would have required tolling of the appearance period pending prosecutors'

7

extradition decisions and would have exonerated bonds if the prosecution did not decide within a reasonable time. (*Id.* at p. 255.) The Legislature did not enact these proposals. It replaced them with the substance of what is now section 1305, subdivision (h). As *Tingcungco* explained, that subdivision allows such tolling only after the prosecution has decided to extradite and it agrees it needs more time to do so. The Legislature therefore considered a scheme like the one North River advocates but enacted a different one.

The Court of Appeal in *Tingcungco* acknowledged some people may find its holding unfair, but "this was (and may again become) an issue for the Legislature to resolve." (*Tingcungco*, *supra*, 237 Cal.App.4th at p. 259.)

Under *Tingcungco*, North River's interpretation is incorrect.

North River offers no reason to ignore *Tingcungco*. It dismissively refers to it only once in its opening appellate brief without attempting to distinguish it, or to fault it, or to engage its thoughtful and thorough analysis of legislative history. The number of cases giving negative treatment to the *Tingcungco* decision is zero. The prosecution's appellate brief explains the case's pertinence. North River filed no reply brief. Then it waived oral argument.

We apply *Tingcungco* because its reasoning is sound and because North River neither discredits nor distinguishes it.

North River's reliance on section 1305, subdivision (j) is unavailing because a continuance under that provision does not extend the appearance period. This subdivision apparently did not come up in *Tingcungco*. Unlike subdivision (h), subdivision (j) does not reference subdivision (g) or extradition at all.

8

Subdivision (j) is merely about when a motion "may be heard." As the Court of Appeal in *People v. Ranger Ins. Co.* (2007) 150 Cal.App.4th 638 (*Ranger*) explained, a continuance under this subdivision extends the date of the hearing but it does not extend the appearance period. (*Id.* at pp. 649–650 [referring to former subd. (i), now subd. (j)]; see *Lumbermens*, *supra*, 49 Cal.4th at pp. 312–313 [this subdivision provides a "30–day grace period for hearings," and under § 1306, subd. (a), court must enter summary judgment after appearance period expires unless court has set aside forfeiture].) The appearance period is the time to establish the grounds for relief, so a party must establish the facts of its section 1305 motion "*before* [the appearance] period expires", notwithstanding an extension of the *hearing* date. (*Ranger*, at pp. 649–650, emphasis added.) The appearance period ended March 20, 2019, before North River established the fact of the prosecution deciding to seek extradition under subdivision (g) or of the prosecution agreeing to tolling under subdivision (h). North River's interpretation of subdivision (j) clashes with *Ranger* and the plain meaning of these interconnected provisions.

Interpreting section 1305, subdivision (j) to apply only to extend the hearing date in accordance with the language of that subdivision does not make the extension moot. There are many reasons to extend a hearing date. Parties may need more time to write briefs. The court's or parties' scheduling constraints may necessitate an extension. Someone may be sick. Subdivision (j) has a purpose, but not the one North River proposes.

It would be unwise to adopt a new and expansive interpretation of section 1305, subdivision (j) based on North River's diffident arguments. In the trial court, North River

9

raised this issue for the first time in its reply brief. On appeal, North River spends a single paragraph analyzing the issue. North River acknowledges *Ranger* but does not discredit or distinguish it. Like most Hail Marys, this attempt fails.

Counterarguments are unavailing.

*People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791 (*Far West*) does not help North River. It predates the legislative history *Tingcungco* analyzed. Furthermore, in *Far West*, Oakland police told Georgia authorities to release a defendant. (*Far West*, at pp. 793, 797.) Alameda County prosecutors claimed this was an error and it did not bind the county. The Court of Appeal explained the crux of the case was—given that the surety had done everything required of it under the statute and bond— "who, as between the surety and the county, must bear the consequences of the error." (*Id.* at pp. 797–798.)

The facts of the present case are a close fit to *Tingcungco* but a far cry from *Far West*. The nub of the problem in *Far West* was that the Oakland police told apprehending authorities in Georgia to *release* the California fugitive. (*Far West*, *supra*, 93 Cal.App.4th at p. 793.) That is, after the bail agent had tracked the runaway to Georgia and secured him there, California police officials told their Georgia counterparts to let the flight risk flee. But then California prosecutors told the court this police error should *not* bind the County Counsel's office. (*Id.* at p. 797.) Telling a court that government errors should not bind the government required some audacity. The trial court put up with it but the Court of Appeal did not. We have nothing like that here.

North River cites *People v. Ranger Ins. Co.* (2002) 99 Cal.App.4th 1229 for the proposition that it is entitled to a

10

continuance as a matter of law.  That case was about extending a hearing due to a judge's schedule, not about extending an appearance period for an extradition decision.  (See *id.* at p. 1235.)

In a five-line paragraph, North River argues due process required the court to grant a continuance.  North River cites one case:  *Ursino v. Superior Court* (1974) 39 Cal.App.3d 611 .  In *Ursino*, restaurateurs appealed an agency's issuance of a building permit to an appeals board.  (*Id.* at p. 615.)  The board lacked a quorum within the 40-day period in which a local ordinance allowed it to decide the case.  (*Id.* at p. 620.)  The Court of Appeal held that, notwithstanding the 40-day limitation, due process required a hearing with at least four of five board members.  (*Id.* at pp. 620–622.)  The facts of *Ursino* are unlike the present case, and North River does not explain how or why the case should apply here.

The bail business involves risk.  When risk is a feature of a business environment, economic actors build that feature into their decisionmaking.  They seek to profit from gauging risks correctly.  Sometimes that pays off and sometimes not.  Rescuing a business when the risk did not pay off is an unsound reason to reject valid precedent.  Rescuing anyone who may have pledged assets as security for the bond is not an issue before us, for North River is the lone appellant.

///

11

## DISPOSITION

The judgment is affirmed.  Costs are awarded to the respondent.


WILEY, J.


I concur:


GRIMES, J.

**STRATTON, P.J., Dissenting**

Appellant made a timely motion under Penal Code[1] section 1305, subdivision (g) for relief from forfeiture of the bail bond it posted on behalf of the fugitive defendant. Subdivision (g) provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (§1305, subd. (g).)

The motion would have been granted had appellant been able to show that the People had decided not to extradite him to the United States to face the pending charge. At the time of the hearing, the People had not yet made that decision, so appellant could not make its case for vacatur of the bond forfeiture. It asked the court to continue the hearing on the motion so that the People could make their decision, a decision totally out of appellant's power to effectuate one way or another.

---

[1] Further undesignated statutory references are to the Penal Code.

1

Our courts of appeal have not devised a uniform standard by which to analyze these issues. Some courts insist upon a strict literal reading of the statute (see, e.g., *People v. Tingcungco* (2015) 237 Cal.App.4th at p. 159; *People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075, 1082–1083); some courts resort to principles of equity upon which to base their analysis. (See, e.g., *People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791, 795 (*Far West*), and cases cited therein.) Our Supreme Court has acknowledged "[i]t is true as a general rule that the bail statutes are strictly construed to avoid forfeiture." (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 308 (*Indiana Lumbermens*).) In my mind "strict construction" does not require a strict literal meaning devoid of considerations of fairness. Further guidance in this regard from the legislature and our Supreme Court would sort out these issues.

I prefer the proposition that courts must, where feasible, strictly construe statutory language in favor of the surety to avoid the harsh results of a bail bond forfeiture. (*People v. The North River Ins. Co.* (2019) 41 Cal.App.5th 443, 448.) And we are not just talking about the surety's interests. Strict construction of bail forfeiture statutes compels courts to protect the surety, and more importantly, the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody in order to obtain the corporate bond. (*People v. United States Fire Ins. Co.* (2015) 242 Cal.App.4th 991, 999.) Courts should not "blindly follow" the literal meaning of every word if to do so would frustrate the legislative purpose of those words. (*People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1384.)

Under section 1305, subdivision (j), a "motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause." (§ 1305, subd. (j).) The Legislature provided a 30-day grace period for the hearing instead of allowing such motions to be *filed* after the expiration of the 180-day period. (*Indiana Lumbermens, supra*, 49 Cal.4th at p. 312 [motions to vacate must be timely brought within the statutory period to avoid a forfeiture within the 180 days].) Here, the trial court continued the hearing on the timely filed motion for 68 days, a postponement to which no party objected.

I find the majority's use of section 1305, subdivision (j) contrary to the way we should interpret this statute. If the court, as expressly empowered, finds good cause and extends the statutory 30-day grace period within which to hear a timely-filed motion for relief from forfeiture, it follows that the forfeiture period is necessarily extended as well; otherwise the relief requested is rendered moot despite the continuance. Factual events may continue to unfold within the extended grace period, which the trial court should be able to consider.

Comparing subdivision (h)[2] to subdivision (j) is not true to the way section 1305 lays out procedures for different factual

---

[2]     Section 1305, subdivision (h) states, "In cases arising under subdivision (g), if the bail agent and the prosecuting agency agree that additional time is needed to return the defendant to the jurisdiction of the court, and the prosecuting agency agrees to the tolling of the 180-day period, the court may, on the basis of the agreement, toll the 180-day period within which to vacate the

3

scenarios. (*Far West, supra*, 93 Cal.App.4th at p. 795 ["As we read it, the statutory bail forfeiture scheme can be parsed as a series of contemplated possibilities, defined in terms of the defendant's location vis-à-vis the jurisdiction of the superior court that set bail."].) Under section 1305, subdivision (h), the parties are permitted to essentially stipulate to the tolling of the 180-day period to file a motion to vacate and the court is empowered to order the requested tolling. This subdivision is a way to get the vacatur ball rolling without the need to file a vacatur motion within the 180-day period where the parties and the court are in agreement that the defendant will eventually be returned, given enough time to arrange that return. Subdivision (h) does not govern what should happen *after* such a motion has been timely filed where, as here, the prosecuting agency has not agreed to tolling.

Here the denial of the motion to vacate the forfeiture works an injustice on the surety and whomever may have pledged their assets as security for the bail bond. As there are no judicial findings to the contrary, the surety did everything it was supposed to do under the statute. It located the fugitive defendant and notified the People of his whereabouts with the appropriate affidavits. It asked the People whether they intended to extradite the defendant for prosecution. At this point the fate of the bond forfeiture was in the hands of the People.

What did the People do? Nothing. Instead of making a timely decision about whether to extradite the defendant, they simply told the court they had not decided. Were they pressed for

_____

forfeiture. The court may order tolling for up to the length of time agreed upon by the parties." (§1305, subd. (g).)

4

time and therefore unable to decide?  The majority says the People had "less than a day's notice" to decide and therefore the timely motion was made "too late."  That is speculation, and, I believe, misreads the record.  We don't know any of that because the trial court did not insist on an explanation, even after it had continued the hearing on the motion for 68 days. Once on notice, I would hold 68 days is enough time to require the People to make up their mind whether to extradite.  If it was not enough time, a further continuance should have been granted.  I see neither rhyme nor reason to base denial of the vacatur of the bond forfeiture on the People's *in*decision.

The bond is a contract between the surety and the People governed by section 1305.  (See *Far West, supra,* 93 Cal.App.4th at pp. 797–798 [where surety's conduct was not unreasonable and was in line with its obligations under the bond contract, forfeiture is reversed where People's conduct prevented return of fugitive defendant]; *People v. Rolley* (1963) 223 Cal.App.2d 639 [where surety did everything it contracted to do, but return of defendant was impeded by law enforcement, forfeiture is vacated].)  The surety complied with its obligation under the contract with the People.  The trial court effectively vitiated the contract by not requiring the People to make the decision it contracted to make when it accepted the surety's bond.

I embrace the general concept that courts should not interfere with prosecutorial decisions.  (*People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 380–381 [Courts "have consistently read subdivision (g) of section 1305 as leaving the timetable and criteria for deciding whether to extradite squarely in the hands of the prosecuting agency."].)  But I do not embrace the proposition that no matter the violence to

5

contractual obligations or the efforts of the surety, courts must defer to prosecutorial *in*decision under section 1305. Nor should courts be permitted to hamstring sureties by deferring to prosecutorial *in*decision. A fair reading of the statute contemplates a prosecutorial decision on extradition before bail is forfeited. The trial court should have required the People to make that decision in response to the motion to vacate the forfeiture or it should have continued the hearing until the People did so. Forfeiture under these circumstances is not right.

STRATTON, P. J.

6