[No. G036803. Fourth Dist., Div. Three. May 4, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
RANGER INSURANCE COMPANY, Defendant and Appellant.

Counsel

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Benjamin P. de Mayo, County Counsel, and Leon J. Page, Deputy County Counsel, for Plaintiff and Respondent.

Opinion

**MOORE, J.**—After a forfeiture of bond due to a criminal defendant's failure to appear in court, a surety received information concerning the probable whereabouts of the defendant, who apparently had fled to Mexico. However, the surety did not send an investigator to Mexico or make any other effort to confirm the information until after the expiration of the 180-day period to exonerate the forfeited bond, as found in Penal Code section 1305.[1] After the expiration of the exoneration period and prior to the hearing on the surety's motion to extend that period, the surety's investigator located the defendant in Mexico. The trial court did not abuse its discretion in denying the motion to extend, based on the minimal efforts the surety demonstrated prior to the expiration of the exoneration period. The court properly declined to consider the supplemental information on the defendant's whereabouts that was obtained only after the expiration of the exoneration period.

Having denied the motion to extend the exoneration period, the court properly denied the surety's motion to vacate the forfeiture of bond. The events supporting the motion occurred only after the exoneration period had ended and, in any event, the surety failed to comply with the requirements of section 1305, subdivision (g) with respect to the involvement of Mexican law enforcement officials. We affirm.

I

FACTS

Ivan Segura Arriaga was charged with a violation of section 261.5, subdivision (c) (unlawful sexual intercourse with a minor). Ranger Insurance Company (Ranger) posted a surety bond in the amount of $25,000. The bail agent shown on the bond was Bad Boys Bail Bonds (Bad Boys). A pretrial hearing was set for May 26, 2005. Arriaga failed to appear and the court ordered the bond forfeited.

---

[1] All further statutory references are to the Penal Code, unless otherwise specifically noted.

Notice of forfeiture of the bond was mailed to Ranger and Bad Boys on June 1, 2005, giving them 180 days, until December 3, 2005, to exonerate the bond. (§§ 1305, 1306.) On November 21, 2005, Ranger and Bad Boys filed a motion to extend the 180-day period for exoneration of bond. The declaration of Olivia Mercado, an employee of Bad Boys, was attached to the motion. Mercado indicated that Arriaga was believed to be at his mother's residence in Mexico. She said that their office had assigned the case to investigator Mike Hayes, to try to prompt the district attorney's office to get Arriaga back into custody. The motion was set for hearing on December 16, 2005.

On that date, Ranger, Bad Boys and the County of Orange signed and filed a stipulation that good cause existed to continue the hearing on the extension motion "beyond the statutory 30-day period," to January 23, 2006.[2] The stipulation recited that Arriaga had been located in Mexico and was to be detained on December 19, 2005, by a bail agency representative, for the purposes of extradition. That same date, the court ordered the continuance, good cause appearing.

On December 19, 2005, the county filed an opposition to the motion to extend the exoneration period. In that opposition, the county detailed its viewpoint that the surety had made very little effort during the 180 days it already had to pursue the matter.

On January 19, 2006, Ranger and Bad Boys filed a motion to vacate the forfeiture and exonerate the bond, pursuant to section 1305, subdivision (g). Attached to the motion was the declaration of Michelle Mangone, who stated that Arriaga had in fact been detained by a bail agency representative in Mexico on December 19, 2005. She further declared that by letter dated January 3, 2006, Deputy District Attorney Susan Laird had informed the moving parties that the district attorney would not elect to extradite Arriaga. A declaration of Hayes, regarding his location and detention of Arriaga, and a copy of the confirming letter signed by Laird, were also provided. The declaration of Hayes stated that he had temporarily detained Arriaga in Mexico City, in front of the National Palace and a Catholic church, and had identified him by taking digital impressions of his fingers and obtaining copies of his Mexican identity documents. Attached to the Hayes declaration

---

[2] This was an apparent reference to section 1305, subdivision (i), which provides in pertinent part: "A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause. . . ."

were copies of two Mexican identity documents, each reflecting Arriaga's name and showing a photograph. Also attached were two pages of finger-prints, and photographs of two men, one of whom seemed to be the same as the individual whose photograph appeared on the Mexican identity documents. The two men were seen standing in front of what would appear to be certain landmark buildings.

The county opposed the motion to vacate the forfeiture. It argued that the requirements of section 1305, subdivision (g) had not been met.

On January 23, 2006, following a hearing on the matter, the court denied the motion of Ranger and Bad Boys to extend the 180-day exoneration period, on the basis that they had not demonstrated much effort during that period. The court also held that, having denied the motion to extend, the motion to vacate forfeiture was moot. On February 8, 2006, summary judgment on the forfeited bond was entered. Ranger appeals.

## II

## DISCUSSION

### A.  *Motion to Extend*

#### (1)  *Introduction*

■    Section 1305, subdivision (a)(4) provides that the court shall declare the bond forfeited if, without sufficient excuse, the defendant fails to appear when, before the pronouncement of judgment, his or her presence is lawfully required. "In such a circumstance, the surety (or insurer, bail agent or depositor) has 180 days from notice of forfeiture to produce the defendant or otherwise show the defendant is in custody. Failure to do so will result in the entry of summary judgment" (*People v. Ranger Ins. Co.* (2000) 81 Cal.App.4th 676, 678–679 [96 Cal.Rptr.2d 892]) "against each bondsman named in the bond in the amount for which the bondsman is bound" (§ 1306, subd. (a)).

"Sections 1305 and 1305.4 provide a 180-day period, plus five days for service of the notice of forfeiture by mail, running from the mailing of notice of forfeiture, within which a surety may obtain relief from forfeiture or exoneration of bail. Section 1305.4 allows the surety to file a motion, based upon good cause, for an order extending the 180-day period. Section 1305,

subdivision (i) provides that the motion must be filed before expiration of the 180-day period but 'may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause.' " (*People v. Alistar Ins. Co.* (2003) 115 Cal.App.4th 122, 125 [9 Cal.Rptr.3d 497], fn. omitted.)

■ The "extension is not automatic. [The surety] has to earn any additional time by a showing of good cause. That means an explanation of what efforts [it] made to locate [the defendant] during the initial 180 days, and why such efforts were unsuccessful." (*People v. Ranger Ins. Co., supra*, 81 Cal.App.4th at p. 681.) "[T]he surety [must] show its due diligence to locate a defendant and secure his or her presence in court. As the *Ranger* court noted, section 1305.4 does not 'giv[e] a surety carte blanche to sit on its hands for six months and then come running into court at the last minute with a bare-bones declaration that leaves huge gaps in the facts, and expect a trial court to simply roll over and give an extension.' [Citation.] In order to show good cause for its extension, the surety must demonstrate that it diligently attempted to locate and capture the defendant during the initial 180 days." (*People v. Accredited Surety & Casualty Co., Inc.* (2006) 137 Cal.App.4th 1349, 1356 [40 Cal.Rptr.3d 892].) In reviewing a court's determination of good cause, we apply the abuse of discretion standard. (*People v. Seneca Ins. Co.* (2004) 116 Cal.App.4th 75, 80 [10 Cal.Rptr.3d 93].)

(2) *Efforts during 180-day exoneration period*

Ranger insists that the court abused its discretion in denying its motion for an extension of the 180-day exoneration period. It asserts that the Mercado declaration amply demonstrated that it had done all it could to procure Arriaga's return and that it only needed extra time in order for the district attorney to decide whether or not to extradite Arriaga. Ranger maintains that it made more effort to produce Arriaga than has been held to be sufficient in other cases, such as *People v. Accredited Surety & Casualty Co., Inc., supra*, 137 Cal.App.4th 1349 and *People v. Alistar Ins. Co., supra*, 115 Cal.App.4th 122.

In *People v. Accredited Surety & Casualty Co., Inc., supra*, 137 Cal.App.4th 1349, the court summed up the bail agent's activities as follows: "At various times between August 3 and January 6, [the bail agent] knew where [the defendant] was, what he was doing, and with whom he was consorting. [The bail agent] conducted at least 10 hours of surveillance. He checked a total of

six addresses for [the defendant] in the Sacramento area over the five months. On two occasions he secured the help of local police to capture [the defendant]. On the first, [the defendant's] family tipped him off and he fled before they entered an apartment; on the second, [the defendant] was 'gone.' [The bail agent] contacted [the defendant's] family in Illinois. He also hired a fugitive recovery specialist and California Patrol Agency to help him. Although [the defendant] avoided capture the entire time, [the bail agent] diligently attempted to apprehend him." (*Id.* at p. 1359.) In the case before us, in contrast, during the exoneration period there was no surveillance, no checking of address information, and no enlistment of local police or other recovery specialists in an effort to actually apprehend Arriaga. In the case before us, the efforts made during the exoneration period paled in comparison to the efforts made in *Accredited*.

In *People v. Alistar Ins. Co., supra*, 115 Cal.App.4th 122, the surety's investigator made numerous telephone calls, ran a database search, came up with a possible address for the defendant in Moreno Valley, checked that address and determined it was not current, contacted the Moreno Valley Police Department, and went to the defendant's sister's house in Moreno Valley and spoke to her. He also spoke to the defendant's brother, who said the defendant had gone to Mexico. (*Id.* at p. 128.) The investigator explained why he nonetheless believed the defendant was residing in Moreno Valley and why he thought he would be able to return the defendant to custody if he continued to pursue the matter in Moreno Valley. The court concluded that the investigator "had made a concerted effort to locate [the] defendant." (*Ibid.*) In considering *Alistar*, it is important to notice that the investigator's activities were not limited to opening up files, making telephone calls and running a database search. Rather, the investigator also checked out the defendant's purported address, called upon the defendant's sister in person, and sought the assistance of the local police. Ranger, on the other hand, did not, during the exoneration period, check out Arriaga's purported address, make any in-person visits, or seek the assistance of the local police.

Ranger focuses not on the substantive nature of the activities it undertook, but on the number of entries made in the declaration supporting its motion to extend. It emphasizes that the Mercado declaration contained many more entries than the declarations in either *People v. Accredited Surety & Casualty Co., Inc., supra*, 137 Cal.App.4th 1349, in which the declaration was divided into seven entries (*id.* at p. 1353), or *People v. Alistar Ins. Co., supra*, 115

Cal.App.4th 122, which Ranger says involved a declaration that had even fewer entries.[3] As we shall show, however, Ranger's fixation on the number of entries is unavailing.

Mercado's declaration notes 18 actions, beginning with calling the court on May 26, 1995, to ascertain the status of the bond. We observe that nine of the actions she reports, including some of the critical ones, were purportedly taken by other persons, whose declarations were not provided. Most of the referenced activity took place between June 9, 2005, and July 8, 2005, when several phone calls were purportedly placed to Arriaga and to an individual named Isidro Rodriguez, purportedly a cosigner on the bond.

Mercado declared that, on July 8, 2005, she spoke to Rodriguez, who purportedly said that he did not even know Arriaga, but had cosigned the bond as a favor to Arriaga's father and uncle. Rodriguez purportedly informed Mercado that he had spoken to Arriaga's mother in Mexico and that she had stated that Arriaga was out running errands for her and would return later on. Mercado said that Rodriguez provided her with the address and telephone number of Arriaga's mother.

There the file sat. There is no indication that Mercado or Ranger gave any further thought to the file until September 1, 2005, when the file was assigned to Hayes for the purpose of working with the district attorney's office to apprehend Arriaga. Mercado asserted that Hayes made numerous calls to the district attorney's office on that date. Assuming this to be the case, the file further sat until October 26, 2005, when Hayes purportedly sent a letter to the district attorney's office. That's it. Nothing else happened until November 21, 2005, when Ranger and Bad Boys sought an extension.

■ All circumstances considered, we cannot conclude that the trial court exceeded the bounds of reason in determining that Ranger failed to demonstrate good cause. (*People v. Seneca Ins. Co., supra*, 116 Cal.App.4th at p. 80.) Ranger had been informed of the probable whereabouts of Arriaga as of July 8, 2005, yet by the 180-day date of December 3, 2005, it would appear Ranger had made no effort whatsoever to confirm the information. Simply obtaining a probable address in Mexico, without confirming the same or doing more, is insufficient. (*People v. Ranger Ins. Co., supra*, 81 Cal.App.4th at pp. 681–682 & fn. 6.) Ranger did not send Hayes to Mexico to

---

[3] Ranger has provided no page point reference for its assertion regarding the number of entries in the declaration at issue in *People v. Alistar Ins. Co., supra*, 115 Cal.App.4th 122. We have not taken the time to verify the assertion, because it is unimportant in any event.

make the confirmation until December 19, 2005. Ranger gives no explanation as to why it made no earlier effort. It only indicates that the ball was in the district attorney's court, to decide whether or not to extradite.

There are too many gaps in the record for us to jump to this conclusion. The motion to extend was unaccompanied by any declaration of Hayes. We do not know to whom he placed calls on September 1, 2005, whether to a contact known to handle extradition decisions or to a receptionist who was uncertain as to where to route the calls. We have no idea whether the calls resulted in substantive telephone conversations or whether Hayes just left messages and had no idea whether they were ever received by an individual equipped and authorized to respond to them. We also do not know the nature or content of the purported October 26, 2005 letter; or again, the particular addressee. On the one hand, we don't know if the letter was couched in purely speculative terms, such as, "What do you generally do if we locate a guy in Mexico?" On the other hand, we don't know if the letter provided concrete information on Arriaga, such as the nature of the charge against him and his exact whereabouts.

The only thing apparent from the record is that once Ranger realized its time had expired, it decided it had better get Hayes down to Mexico to confirm that, in fact, Arriaga was at his mother's home there. This does not "demonstrate that [Ranger] diligently attempted to locate and capture the defendant during the initial 180 days." (*People v. Accredited Surety & Casualty Co., Inc., supra*, 137 Cal.App.4th at p. 1356.)

(3) *Effect of stipulation and order*

■ Ranger tries to divert our attention from its lack of effort during the exoneration period by focusing on what happened after the expiration of that period. It attempts to make much of the stipulation to continue the hearing on the motion to extend. True enough, the stipulation recited that Ranger was sending a representative to Mexico to detain Arriaga on December 19, 2005, in the interest of seeking extradition. Obviously, Ranger, having failed to detain Arriaga within the exoneration period, hoped to detain him before the hearing on its motion to extend. The county cooperated in Ranger's request to continue the hearing by signing the stipulation that Ranger had prepared. Ranger tries to work an estoppel against the county for its cooperation. Ranger highlights the language in the stipulation to the effect that there was "good cause to continue the hearing." It tries to twist this language into an

admission on the part of the county that there was good cause to extend the exoneration period. Ranger is mixing apples and oranges. Good cause for the continuance of a hearing is not tantamount to good cause for the extension of the exoneration period.

Ranger's citations to authority pertaining to judicial estoppel are misplaced. This is not an instance in which a litigant engaged in " 'judicial fraud [through its] deceitful assertion of a position completely inconsistent with one previously asserted, thus compromising the integrity of the administration of justice by creating a risk of conflicting judicial determinations.' [Citation.]" (*Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1468 [45 Cal.Rptr.3d 560].) The county did not obtain any advantage by accommodating Ranger in its continuance request and in signing the stipulation that Ranger had drafted. The county may have agreed that there was good cause for a continuance, in order to enable Ranger to present all the information it desired to the trial court, but that did not mean that the county thereby waived its right to argue that Ranger had failed, during the exoneration period, to demonstrate efforts warranting good cause for an extension of that period.

In addition to arguing that the county, having agreed to a continuance, should be estopped to argue there was no good cause for an extension, Ranger argues that the court, having ordered a continuance, should be deemed to have ordered an extension of the exoneration period to the hearing date on the motion. Were this the case, then Hayes's otherwise tardy detainment of Arriaga would be taken into consideration in ascertaining whether Ranger demonstrated due diligence during the exoneration period as so extended. Ranger's argument fails.

Ranger cites several cases in support of its position, but they are inapposite. The cases do not address the significance of the setting of a hearing date on a section 1305.4 motion to extend. Ranger cites language from *County of Los Angeles v. Surety Ins. Co.* (1984) 152 Cal.App.3d 16 [199 Cal.Rptr. 351] concerning the tolling of the exoneration period. However, that case has to do with a portion of section 1305, not applicable here, providing a tolling during the period of certain temporary disabilities. (*County of Los Angeles v. Surety Ins. Co., supra*, 152 Cal.App.3d at pp. 20–21; see now § 1305, subd. (e).) Ranger also cites *People v. Wilcox* (1960) 53 Cal.2d 651 [2 Cal.Rptr. 754, 349 P.2d 522] and *People v. Granite State Insurance Co.* (2003) 114 Cal.App.4th 758 [7 Cal.Rptr.3d 887], each having to do with the commencement of the 90-day period for entry of summary judgment under section 1306. Neither of those cases states that a timely motion to extend automatically extends the exoneration period until the date the motion is heard. The

cases show only that when a court continues the hearing on the motion, it retains jurisdiction to grant the relief requested, even if the hearing date is after the exoneration period has expired. (*People v. Wilcox, supra*, 53 Cal.2d at p. 657; *People v. Granite State Insurance Co., supra*, 114 Cal.App.4th at p. 768.)

The exoneration period in the case before us expired in the first week of December 2005. The trial court, having set the motion to extend for hearing on January 23, 2006, retained jurisdiction on that date either to leave the expired exoneration period untouched, or to, in effect, reinstate and extend it. The court exercised its discretion to do the former. Thus, Ranger's detainment of Arriaga on December 19, 2005, and procurement of information from the district attorney's office on January 3, 2006, occurred after the expiration of the exoneration period. Ranger failed in its effort to use the stipulation between parties as a device for extending the exoneration period without a court order.

■ "Had the Legislature . . . intended to automatically expand the surety's time to return the defendant to custody, it would have expressly done so. Because it did not, we conclude that section 1305.4 does not provide an automatic . . . 'breather' for sureties who are unable to demonstrate good cause for failing to return a defendant to custody within the initial 185-day period. [The surety] failed to establish good cause for its failure to return the defendant to custody within that period. Accordingly, the fact that [the defendant] was [detained by the surety] while the court still had jurisdiction to hear the motion does not entitle [the surety] to relief from the order of forfeiture." (*People v. Seneca Ins. Co., supra*, 116 Cal.App.4th at p. 83.) "Indeed, the court lacked jurisdiction to grant the motion based on facts occurring after the initial 185-day period had expired." (*Id.* at p. 82; see also *People v. Granite State Insurance Co., supra*, 114 Cal.App.4th at p. 768.)

B. *Motion to Vacate Forfeiture*

Ranger argues that, because the district attorney had expressed disinterest in extraditing Arriaga, it was error for the trial court to dismiss its motion to vacate forfeiture of bond. This argument fails, for more than one reason.

■ First, even if the information about the district attorney's stance would otherwise have entitled Ranger to exoneration, the information came too late. It was obtained only after the exoneration period, during which events establishing good cause must occur, had expired. "[U]nder section 1305

a motion to vacate forfeiture must be filed before the end of the exoneration period, and the facts upon which the motion is based must be established before that period expires. The hearing on the motion, however, can occur within the 30 days following the exoneration period, and the hearing can be continued to an even later date upon a showing of good cause. (§ 1305, subd. (i).) Holding the hearing after the exoneration period has expired does not extend that period, which is the period of time for filing a motion to vacate and establishing the grounds for relief, but does extend the time to actually set aside the forfeiture." (*People v. Granite State Insurance Co., supra*, 114 Cal.App.4th at p. 768.)

Second, the requirements of section 1305, subdivision (g), on which Ranger based its motion, were not met in any event. Section 1305, subdivision (g) provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

Ranger has made no allegation that Arriaga was either detained in the presence of, or identified by, a Mexican law enforcement officer. Indeed, Ranger makes no argument that it satisfied the requirements of the statute. Rather, Ranger argues that it did not need to. According to Ranger, once Laird signed the confirming letter indicating that the district attorney did not intend to extradite Arriaga, Ranger was entitled to exoneration of bond under section 1305, subdivision (g). It argues that the law does not require an idle act (Civ. Code, § 3532) and that it would have been an idle act for Ranger to involve the Mexican law enforcement authorities once it knew that the district attorney had no interest in extradition efforts.

However, we can only speculate what the response of the district attorney would have been had Arriaga been detained and identified by a Mexican law enforcement officer as the statute requires. Whether the district attorney deemed the detention and identification by Hayes as unreliable and insufficient, or was simply disinterested in pursuing Arriaga in any event, we do not know. The record is insufficient for us to conclude that compliance with the requirements of the statute would have been an idle act.

## III

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Sills, P. J., and Rylaarsdam, J., concurred.