Filed 5/29/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B253003 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA401644) |
| ERICSON TINGCUNGCO, | |
| Defendant; | |
| ALLEGHENY CASUALTY COMPANY, | |
| Real Party in Interest and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Maral Injejikian, Judge. Affirmed.

John M. Rorabaugh for Real Party in Interest and Appellant.

Ruben Baeza, Jr., Assistant County Counsel and Joanne Nielsen, Deputy County Counsel for Plaintiff and Respondent.

_____

Allegheny Casualty Company appeals from the order denying its motion to vacate its forfeiture of a bail bond, contending that the applicable statute required additional tolling of the forfeiture period while prosecutors decided whether to extradite a fugitive who had been located in a foreign country. We disagree and affirm the order.

## FACTS AND PROCEDURAL HISTORY

On August 30, 2012, Allegheny Casualty Company, through its agent, posted $50,000 bail for Ericson Tingcungco, who had been charged with burglary. When Tingcungco did not appear as ordered on September 5, 2012, the trial court forfeited bail. The appearance period – the period during which the bond might be exonerated if Tingcungco appeared – was later extended to October 4, 2013.

On October 1, 2013, Allegheny notified the Los Angeles County District Attorney's office that Tingcungco had been located in Mexico, and asked it to decide whether to begin extradition proceedings. If the district attorney elected not to do so within the appearance period, then the bail bond would be exonerated. (Pen. Code, § 1305, subd. (g).)[1] On October 2, 2013, Allegheny filed a motion asking the trial court to further toll the appearance period while the district attorney decided whether to pursue extradition and then either continue the tolling period during extradition proceedings or vacate the forfeiture and exonerate bail, depending on which course the district attorney pursued.

The district attorney opposed the motion, contending that section 1305, subdivision (g) imposed a hard deadline that prevented vacating a bond forfeiture if prosecutors had not elected whether to extradite within the appearance period, even if the fugitive had not been located until right before that period ended. The opposition was supported by the declaration of prosecutor Ann Huntsman, who set forth in detail the lengthy and complicated steps that must be taken before deciding whether to extradite a fugitive located in a foreign country. According to Huntsman, it usually took two weeks

_____

[1] All further undesignated section references are to the Penal Code.

2

to make that decision.  The trial court denied Allegheny's motion.  Allegheny contends the trial court erred.[2]

## STANDARD OF REVIEW

Because we interpret a statute based on undisputed facts, we are not bound by the trial court's interpretation of the statute, and instead decide the correct interpretation as a matter of law.  (*Pasadena Metro Blue Line Construction Authority v. Pacific Bell Telephone Co.* (2006) 140 Cal.App.4th 658, 663-664.)  The fundamental rule of statutory construction is to ascertain the intent of the Legislature in order to effectuate the purpose of the law.  In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage.  (*Id.* at p. 664.)  The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear.  The statute must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity.  (*Ibid.*)  If the language of a statute is clear, we should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history.  Statutes must be harmonized both internally and with each other.  (*Ibid.*)

## DISCUSSION

1.      *The Statutory Framework and the* Seneca *Decision*

If a criminal defendant out on bail fails to appear when lawfully required to do so, the trial court must declare bail forfeited.  (§ 1305, subd. (a).)  The clerk must mail notice of forfeiture to the surety for bonds greater than $400.  Adding in five days for mailing, the surety then has 185 days to bring the defendant in to court.  (§ 1305, subds. (b)-(c).)

---

[2]      The record is silent as to whether the district attorney decided to extradite Tingcungco.

If the defendant appears within that period the court must vacate the forfeiture and exonerate the bond. (§ 1305, subd. (c)(1).) Upon a showing of good cause the surety may seek an extension of up to another 180 days. (§ 1305.4.) If that motion is granted, the defendant's appearance during the extension period also requires vacating the forfeiture and exonerating the bond. (*People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075, 1079 (*Seneca*).)

At issue here is section 1305, subdivision (g), which applies to bailed defendants who flee to a foreign country but are not in custody there. It reads: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained by a bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (§ 1305, subd. (g).)[3]

The *Seneca* court considered the effect of that provision where the surety notified the prosecutor that its fugitive on bail had been located in a foreign country eight months before the bond exoneration period was set to end. Although the prosecutor said she would seek extradition, she had not initiated the process by the time the exoneration period ended. The surety moved to either: (1) vacate the forfeiture and exonerate bail because the prosecutor's failure to initiate extradition proceedings was effectively a decision not to extradite; or (2) toll the statutory appearance deadline so the prosecutor could pursue extradition. The trial court denied that motion.

The *Seneca* court affirmed. Applying the rules of statutory construction, it concluded: "A bail bond is not exonerated simply because the People have not

---

**3**    Respondent does not contend on appeal that Allegheny failed to satisfy any of the requirements of section 1305, subdivision (g) other than obtaining a timely decision whether or not to extradite Tingcungco.

4

completed *(or even initiated)* extradition of the defendant before the end of the bond exoneration period." (*Seneca, supra,* 189 Cal.App.4th at p. 1082, italics added.) Instead, judgment must be entered in the amount of the bond unless the fugitive defendant is brought into court or the prosecutor foregoes extradition within the bond appearance period. "The statutory scheme does not authorize additional extensions or tolling of the bond exoneration period in the circumstances presented." (*Ibid.*)

The *Seneca* court acknowledged that the bail statutes must be strictly construed to prevent forfeiture, and also recognized the potential for unfairness if prosecutors either falsely elected to extradite and then abandoned their efforts, or did nothing. (*Seneca, supra,* 189 Cal.App.4th at pp. 1082-1083.) Even so, the language of the statutory scheme did not support the surety's position because exoneration of the bond was contingent on the return of the defendant, not the initiation of extradition proceedings. "We are loathe to impose nonstatutory deadlines on prosecutors to initiate the process of extradition or to otherwise require prosecutors to pursue extradition on a particular timetable." (*Id.* at p. 1083.)

## 2.     *The Legislative Response to* Seneca

In February 2012, a bill was introduced in the California Senate to amend section 1305, subdivision (g) to accommodate instances where the prosecutor does not make an extradition decision within a reasonable time after the surety notifies it that a fugitive on bail has been located in a foreign country. (Sen. Bill No. 989 (2011-2012 Reg. Sess.) as introduced Feb. 1, 2012.) The proposed amendment would have added the following language to subdivision (g): "If the prosecuting agency . . . fails to make an extradition decision within a reasonable period of time after receipt of the [notification] affidavit the bond shall be exonerated. The court shall order the tolling of the 180-day period provided in this section pending the prosecuting agency's . . . extradition decision. If the prosecuting agency . . . proceeds with the extradition, and upon motion by the surety or bail agent, the court shall order the tolling of the 180-day period provided in this section from the date on which the surety or bail agent delivered the affidavit to the

5

prosecuting agency . . . until such time as the bond is exonerated or the extradition process is completed." (*Ibid.*)

A bill analysis discussed *Seneca* in detail and cited the author as stating that the bill was needed "where the prosecutor declines to make a decision about extradition in a timely fashion." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 989 (2011-2012 Reg. Sess.) April 24, 2012, p. G.) It therefore appears that the bill as introduced was in reaction to *Seneca*.

However, the bill was amended one week later to eliminate the provision concerning a prosecutor's delay in deciding whether to extradite and replaced it with a new subdivision (g)(2), which read: "In cases arising under this subdivision [(g)], if the bail agent and the prosecuting attorney agree that additional time is needed to return the defendant to the jurisdiction of the court, the court may, on the basis of the agreement, toll the 180-day period within which to vacate the forfeiture for the length of time agreed upon by the parties." (Sen. Bill No. 989 (2011-2012 Reg. Sess.) as amended May 1, 2012, p. 5.)

An analysis of the amended version of the bill quotes the author as stating that the new version "would allow a court to toll the 180-day period within which to vacate bail forfeiture, if it is agreed by both the bail agent and prosecuting attorney that additional time to return a fugitive defendant to the jurisdiction of the court is necessary. The bill simply allows both parties to come to an agreement if more time is needed to return a fugitive to custody." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 989 (2011-2012 Reg. Sess.) as amended May 17, 2012, prepared for June 12, 2012 hearing, p. 4.) A representative of the bail bond industry was quoted characterizing the new version of Senate Bill No. 989 as a "modest bill [which] would allow the court to postpone the forfeiture of bail bonds in cases where additional time is necessary to extradite defendants from foreign jurisdictions. Importantly, the forfeiture could be postponed only when the local prosecutor agrees to a postponement. The bill gives district attorneys complete control over whether any postponement will be granted." (*Id.* at p. 6.)

The version of the bill that was eventually enacted made minor changes to the amended version and relocated it as a separate subdivision (h):  "In cases arising under subdivision (g), if the bail agent and the prosecuting agency agree that additional time is needed to return the defendant to the jurisdiction of the court, and the prosecuting agency agrees to the tolling of the 180-day period, the court may, on the basis of the agreement, toll the 180-day period within which to vacate the forfeiture.  The court may order tolling for up to the length of time agreed upon by the parties."  (Stats. 2012, ch. 129, § 1.)

3.　　*The Legislative History Precludes the Tolling Period Extension Advocated by Allegheny*

Allegheny contends that bail should have been exonerated because it fully complied with its obligations under section 1305, subdivision (g), and its right to exoneration should not be frustrated by matters solely within the prosecutor's control – the decision whether to extradite.  Allegheny also contends that a fair reading of subdivision (h) should allow for further tolling while the prosecutor makes its decision.  Our reading of the legislative history leads us to reject these contentions.

The evolution of a proposed statute after its original introduction is helpful when determining legislative intent.  (*People v. Hunt* (1999) 74 Cal.App.4th 939, 947.)  The Legislature's rejection of a specific provision which appeared in the original version of an act supports the conclusion that the act should not be construed to include the omitted provision.  (*Ibid.*)  While unadopted proposals may sometimes have little value when determining legislative intent (*California Court Reporters Assn. v. Judicial Council of California* (1995) 39 Cal.App.4th 15, 32), the amendments made to Senate Bill No. 989 take on extra significance when viewed in conjunction with another rule of statutory construction:  The Legislature is deemed to be aware of  judicial decisions already in existence and to have enacted or amended a statute in light of those decisions.  Therefore we may assume that the Legislature intended to maintain a consistent body of rules and to adopt the meaning of statutory terms already construed.  (*People v. Scott* (2014) 58 Cal.4th 1415, 1424; *People v. Garcia* (2006) 39 Cal.4th 1070, 1087-1088

[Legislature's failure to amend statute in light of appellate decision showed it did not intend to invalidate that decision].)

As introduced, Senate Bill No. 989 would have directly addressed and remedied the problem at issue here:  the need to further toll the exoneration period while the prosecutor decides whether to extradite a fugitive on bail located in a foreign country. While that version of the bill was still in play, a bill analysis discussed *Seneca* in detail in a manner that suggested the bill was addressing that decision.  The bill was then amended to strip out that provision in its entirety and replace it with a far different tolling mechanism.  Under the bill as amended and eventually enacted, the trial court could only extend the exoneration period based on an agreement by the prosecutor to do so if more time were needed to extradite the defendant.  This language therefore presumes that a decision to extradite was made.

We recognize that the facts at issue in *Seneca* were different from those here.  In *Seneca*, the district attorney had decided to extradite but did not move the process along, whereas here no decision to extradite had been made.  Even so, *Seneca* employed broad language concerning the limited availability of tolling under section 1305, subdivision (g).  According to *Seneca* a bond is not exonerated just because the prosecutor had not completed "or even initiated" extradition before the bond exoneration period ended. (*Seneca, supra,* 189 Cal.App.4th at p. 1082.)  The *Seneca* court also noted that bond exoneration was contingent upon return of the defendant within the exoneration period, not the initiation of extradition proceedings.  (*Ibid.*)

The Senate bill analysis that discussed *Seneca* picked up on this language, characterizing the holding to mean that "where the prosecution has not made a decision whether or not to seek extradition and the 180-day period before forfeiture runs, the bond must be forfeited."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 989 (2011-2012 Reg. Sess.) April 24, 2012, p. I.)  Thus, it appears the Legislature was initially motivated to address that aspect of *Seneca* but deliberately chose not to extend tolling to those situations in which the prosecutor had not made the extradition decision before the 180-day period expired.

8

To recap, Allegheny contends that: (1) section 1305 subdivision (g) should be read to extend the bond exoneration period while the prosecutor decides whether to extradite; and (2) subdivision (h) should be expanded to allow for tolling in that situation as well. As noted, the Legislature considered an amendment to subdivision (g) that would have allowed for such tolling, but instead adopted subdivision (h), which, as we read it, allows tolling only after the prosecutor has decided to extradite but needs more time to do so. Based on the legislative history, Allegheny's proposed construction of subdivisions (g) and (h) is untenable.

Allegheny also contends that its inability to produce Tingcungco before the exoneration deadline should be excused under the contract doctrine of impossibility (Civ. Code, § 1511) because the district attorney failed to make a timely extradition decision. Allegheny cites two cases for this proposition: *People v. Meyers* (1932) 215 Cal. 115 (*Meyers*); and *People v. American Surety Insurance Co.* (2000) 77 Cal.App.4th 1063 (*American Surety*). Neither is applicable.

The *Meyers* court held that a bond should be exonerated because the bondsman would have to violate a court order in another county and thus be liable for contempt in order to do so. (*Meyers, supra,* 215 Cal. at p. 119.) The fugitive defendant in *American Surety, supra,* 77 Cal.App.4th 1063 was deported to Mexico and barred from reentering the United States for a drug offense conviction. The *American Surety* court held that bail was exonerated under section 1305, subdivision (d), which requires vacation of forfeiture and exoneration of a bond when the defendant is permanently unable to appear in court due to, among other reasons, detention by civil authorities.

*Myers* long pre-dates section 1305 and neither case concerns subdivisions (g) and (h). Given the Legislature's decision to forego the opportunity to abrogate *Seneca* and instead adopt a tolling provision that requires the agreement of the prosecutor after a decision to extradite has been made, we decline to adopt the interpretation advanced by Allegheny. Instead, we conclude that compliance with subdivision (g) requires the surety to locate the fugitive far enough in advance of the end of the 180-day appearance period to allow the prosecutor to decide whether or not to extradite. If the prosecutor chooses to

9

extradite before the appearance period ends, tolling may be granted under subdivision (h), but only if the prosecutor, having decided to extradite, agrees to do so.

Finally, Allegheny contends that *People v. Lexington National Insurance Corp.* (2010) 181 Cal.App.4th 1485 (*Lexington*), supports its contention that the exoneration period should have been tolled while the district attorney made an extradition decision. *Lexington* is inapplicable. The fugitive defendant in *Lexington* was in custody in Virginia. The surety moved to vacate the forfeiture and exonerate the bond. When the trial court denied that motion, the surety asked the trial court to toll the exoneration period. *The trial court refused.* On appeal the *Lexington* court held the trial court erred because the fugitive was under a temporary disability pursuant to section 1305, subdivision (e), which required tolling during that period. Tolling during the period of disability would have allowed the prosecutor time to decide whether to extradite the defendant under section 1305, subdivision (f), which applies when a fugitive on bail is in custody in another jurisdiction. (*Lexington,* at p. 1492.)

Allegheny's reliance on *Lexington's* statement concerning the prosecutor's ability to make an extradition decision during the tolling period reads more into the tolling discussion than is there. The *Lexington* court did not approve of tolling under subdivision (f) – or by extension subdivision (g) – in order to provide time for an extradition decision. Instead, the tolling was required by subdivision (e) because of defendant's disability by incarceration, making the prosecutor's time to decide a by-product of the tolling period.

We acknowledge that our holding may strike some as unfair and could discourage some sureties from pressing their search for a fugitive as the exoneration period deadline approaches.[4] However, as respondent pointed out during oral argument, section 1305, subdivision (g) imposes other requirements that may be beyond a surety's control after a fugitive is located and temporarily detained in another jurisdiction: bringing the fugitive

---

[4] We also note that *Seneca* at least raised the prospect that prosecutorial bad faith in delaying extradition might justify additional tolling. (*Seneca, supra,* 189 Cal.App.4th at p. 1082.)

to a local law enforcement officer in that jurisdiction and getting the officer to identify the defendant in an affidavit.  It may not be possible to accomplish those tasks when a fugitive is located and detained as close to the end of the exoneration period as occurred here.  At bottom, this was (and may again become) an issue for the Legislature to resolve.  Based on the current statutory scheme and its legislative history, we cannot adopt Allegheny's interpretation of the applicable statutes.

## DISPOSITION

The order denying vacation of forfeiture and exoneration of the bond is affirmed.  Respondent shall recover its appellate costs.

RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.

11