Filed 8/18/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>THE NORTH RIVER<br>INSURANCE COMPANY,<br><br>        Defendant and Appellant;<br><br>BAD BOYS BAIL BONDS,<br><br>        Real Party in Interest and<br>Appellant. | B322752<br><br>Santa Clara County<br>Super. Ct. No. F1765160 |

        APPEAL from a judgment of the Superior Court of Santa Clara County, My-Le Jacqueline Duong, Judge.  Reversed and remanded.

        Jefferson T. Stamp for Appellants.

        James R. Williams, County Counsel, Christopher A. Capozzi and Sterling S. Larnerd, Deputy County Counsel, for Plaintiff and Respondent.

_____

After tracking down a fugitive, North River Insurance Company and its bail agent (collectively, North River) asked for its bail money back.  The court said no:  the prosecution had not decided whether to extradite the fugitive from Mexico.  North River sought a continuance, to give the prosecution enough time to decide.  The court refused that as well.  Because *prosecutors* would not decide, and because *prosecutors* would not agree to a delay to allow themselves to decide, *North River* had to forfeit its bail money, said the trial court.  We reverse.  Section citations are to the Penal Code.

I

The prosecution filed a complaint alleging Geovanni Quijadas Silva committed a lewd act on a child.  North River posted a $100,000 bond to release Silva.

Silva did not appear for a hearing on February 22, 2018.  When he went missing, the trial court forfeited his bond and mailed notice of the forfeiture on February 26, 2018.  The forfeiture would become final in 180 days (plus five days for mailing), on August 30, 2018, unless the bail company could prompt Silva to come to court or had caught him by then.

North River began hunting for Silva.  At its request, the court granted two extensions for a total of 180 days.  March 20, 2019, was the final day of this new interval.  On that day, North River said it had found and secured Silva in Mexico and so moved to vacate the forfeiture and to exonerate its bond.

North River's exoneration motion—its motion to get its money back—was under section 1305, subdivision (d) or (g).  In the alternative, it moved to toll time under section 1305, subdivision (e) or (h).

North River's motion included a declaration by an investigator who said he found Silva in Mexico on March 15, 2019. The investigator detained Silva in the presence of a Mexican law enforcement officer, who identified Silva. The motion had other exhibits, including Silva's Mexican identification card and fingerprints, photos of Silva and the investigator, and statements from the officer and Silva.

North River moved for a continuance. The prosecution did not oppose this motion, and the court continued the matter on April 26, 2019. We grant North River's uncontested request to augment the record to include the court's minutes for this continuance.

On June 8, 2019, the prosecution filed a brief opposing the motion to vacate the forfeiture. In other words, the prosecution did not want the court to return North River's money. The prosecution's logic was that the prosecutors could not make an extradition decision within the appearance period—which is to say by March 20, 2019. The prosecution also refused to *decline* to extradite within that period. On the issue of extradition, then, the prosecution would not say yes and it would not say no. Its decision was not to decide.

The prosecution noted North River served the motion on the last day of the appearance period and, moreover, served it on an inconvenient office—an office where the prosecutor of record and the prosecutor who handled contested bail motions did not work. The prosecution did acknowledge the district attorney's office stamped the motion "Received" on March 20, 2019, and the individual prosecutor knew about the contested bail motion "at some point" before April 12, 2019. The prosecution nonetheless insisted it had yet to make an extradition decision. The

prosecution also said, without explanation, the fingerprints were unusable.

In reply, North River said the prosecution violated due process by not deciding about extradition and by not saying whether it would agree to tolling. North River alternatively argued the court should toll time under section 1305, subdivision (h) or should grant a continuance under section 1305, subdivision (j).

On June 28, 2019, the court denied North River's motion. It found the matter was untimely because the prosecution had not made a decision about extradition by the end of the appearance period, March 20, 2019, and no statutory provisions required the prosecution to make a decision by then. The court also denied the alternate requests to toll the forfeiture period or to continue the matter. The court did not require the prosecution to make an extradition decision. It did not make findings about the fingerprints or about the sufficiency of North River's detention of Silva.

On July 10, 2019, the court entered a judgment of $100,000 against North River, which appealed.

## II

The law required the court either to insist that the prosecution make an extradition decision or to grant the continuance so the prosecution had time to decide.

## A

We independently review the trial court's interpretation of statutes. (*County of Los Angeles v. Financial Casualty & Surety, Inc.* (2018) 5 Cal.5th 309, 314.)

We review some bail basics. We italicize the many times the bail statute expressly directs courts to seek *justice*, and later we return to explain the relevance of these words to our analysis.

When someone on bail fails to appear, the trial court declares the bail bond forfeited. (§ 1305, subd. (a).) The bail company then has an appearance period either to produce the defendant or to show other circumstances requiring the court to set aside the forfeiture. (*Id.*, subd. (c).) This law authorizes the court to act upon "terms that are *just*." (*Id.*, subd. (c)(1) & (c)(2), italics added.) The appearance period lasts 180 days (plus five days for mailing) from when the court mails the notice of forfeiture. (*Id.*, subd. (b).) If the bail company shows good cause, the court may extend this period for up to 180 days from the date of the order granting the extension. (§ 1305.4.) If the defendant appears during the appearance period, the court must vacate the forfeiture and exonerate the bond. (§ 1305, subd. (c)(1).) When a defendant is in custody beyond the jurisdiction of the court and prosecutors decide not to seek extradition, the court shall vacate the forfeiture and exonerate the bond on terms that are *just*. (*Id.* subd. (f).) If the court does not set aside the forfeiture by the end of the appearance period, it must enter summary judgment against the bail company. (§ 1306, subd. (a).)

There is a flight exception. If the defendant flees California, subdivision (g) of section 1305 gives bail companies a potential out. Subdivision (g) provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction

5

of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are *just* and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (§ 1305, subd. (g), italics added.)

In cases arising under section 1305, subdivision (g), the court may toll the appearance period under subdivision (h). To do so, the bail agent and the prosecution must agree it will take more time to return the defendant to the court's jurisdiction, and the prosecution must agree to tolling. (*Id.*, subd. (h).)

Subdivision (j) of section 1305 allows the court to hear a motion after the appearance period expires. It states, "A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause." (§ 1305, subd. (j).)

When construing this statute, our job is to effectuate its purpose. (E.g., *Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135 (*Apple*).) "The dominant mode of statutory interpretation over the past century has been one premised on the view that legislation is a purposive act, and judges should construe statutes to execute that legislative purpose. This approach finds lineage in the sixteenth-century English decision *Heydon's Case*, which summons judges to interpret statutes in a way 'as shall suppress the *mischief*, and advance the *remedy*.' "

(Katzmann, Judging Statutes (2014) p. 31, italics added.)  Our polestar is devotion to the statute's purpose.  (*Apple, supra*, at p. 135.)

B

We hold the trial court either had to ask the prosecution to announce its extradition decision or had to grant North River's request to continue the appearance period to give the prosecution enough time to make its decision.  This interpretation is the reasonable construction of a statute that has the explicit purpose of achieving justice.

The prosecution contends section 1305, subdivision (g) applies only if it *decides not* to extradite the defendant *within* the appearance period.  The text of that subdivision, however, says nothing about a deadline for the prosecution to make its decision.

A rule of statutory construction governs.  We generally construe bail statutes strictly and in favor of the bail company to avoid bail forfeiture.  (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 308.)  It would be an "improper windfall for the County" if it could enjoy the fruits of the bail company's costly posse and yet also reap the benefit of the forfeited bond.  (*Ibid.*)  We construe the statute to avoid this result, which could create a perverse incentive for prosecutors to *avoid* making timely extradition decisions.

In addition to this rule of construction, the statutory text establishes the Legislature wanted courts to engineer "just" arrangements with bail companies.  Section 1305 repeats this direction four times.  Requiring the prosecution to make a timely extradition decision advances the cause of justice.

The purpose of bail and bail forfeiture is to ensure defendants come to court and obey court rulings.  (See *People v.*

7

*Wilcox* (1960) 53 Cal.2d 651, 656–657 (*Wilcox*).)  Bail rules, including appearance periods, give bail companies predictable deadlines for what can be a challenging and expensive hunt. They must find fugitives and file section 1305, subdivision (g) motions within that period.  North River did that.  There is no reason to require the *prosecution*'s decision, a decision completely beyond the bail company's control, to fall within the period.  "In matters of this kind there should be no element of revenue to the state nor punishment of the surety." (*Wilcox*, *supra*, 53 Cal.2d at p. 657.)

The prosecution's interpretation of the statute creates unpredictability by arrogating to prosecutors unsupervised control.  How long will prosecutors take to decide about extradition?  Are two weeks enough?  (Cf. *People v. Tingcungco* (2015) 237 Cal.App.4th 249, 252–253 [prosecutor described the "lengthy and complicated steps that must be taken before deciding whether to extradite a fugitive located in a foreign country" and stated the decision "usually took two weeks"] (*Tingcungco*).)  Here, the prosecution had about 77 days between when it had notice of the contested bail motion and the hearing. That is about 11 weeks.  The prosecution has declined to quantify the duration it prefers.  Increasing the uncertainty of when, and whether, a bail company will get paid cannot sharpen its incentive to pursue fugitives.

We hold the prosecution may make its decision during a section 1305, subdivision (j) continuance.

The prosecution cites *People v. Ranger Ins. Co.* (2007) 150 Cal.App.4th 638, which is unlike this case for several reasons.  In *Ranger*, the trial court *denied* a request for an extension of the appearance period, the bail company found the defendant *after*

the appearance period had ended, and the bail company did not meet the requirements of subdivision (g) because it detained the defendant without the presence of local law enforcement. (*Id*. at pp. 642–643, 650.)

*Ranger* did say the bail company must establish the "facts" of section 1305, subdivision (g) motions before the appearance period expires, even if the court continues the hearing. (*Ranger*, *supra*, 150 Cal.App.4th at pp. 649–650 [referring to former subd. (i), now subd. (j)].) To the extent *Ranger* holds the prosecution's extradition decision is one of these "facts," we respectfully disagree. The bail company must detain the fugitive within the appearance period. This duration sensibly marks the bail company's deadline. But there is no good reason the prosecution's extradition decision—which only the prosecutors control—must fall within this period.

*Ranger*'s analysis relied on *People v. Seneca Ins. Co.* (2004) 116 Cal.App.4th 75, which used the words "facts occurring after" the appearance period to refer to a bail agent's act of telling police about a defendant's location and the defendant's arrest in California on a bail warrant. (*Id*. at p. 82.) We agree with *Seneca* that an extension of the hearing does not give the bail company extra time to *find* the defendant. The defendant's location is a "fact" the bail company must know before the appearance period ends. The prosecution's *decision*, however, is not such a "fact."

Our interpretation fits the broader bail contract structure. Where the bail company has complied with its obligations, government prosecutors should not be able to use their own indecision to allow the government to keep bail money. The bond is a contract between the bail company and the government.

9

Section 1305 governs that contract.  (See *People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791, 797–798 [reversing forfeiture where the bail company reasonably met its obligations under the bond contract and the government's conduct prevented return of fugitive defendant]; *People v. Rolley* (1963) 223 Cal.App.2d 639, 642 [vacating forfeiture where bail company did everything it contracted to do, but government impeded defendant's return].)  The bail company performed its end of the bargain.  The trial court vitiated the bargain by allowing the government to escape all obligations simply by proclaiming irresolution.

Our interpretation is consistent with section 1305, subdivision (h).  That subdivision allows the parties to stipulate to tolling the 180-day period to file a motion to vacate and allows the court to order the requested tolling.  This is a way to get the vacatur ball rolling without the bail company filing a subdivision (g) motion.  Subdivision (h) does not govern what should happen *after* such a bail company files a timely subdivision (g) motion and the prosecuting agency has not agreed to tolling.

We do not follow *Tingcungco, supra*, 237 Cal.App.4th 249.  In that case, a defendant failed to appear, and the court ordered the bail forfeited.  (*Id.* at p. 252.)  Three days before the appearance period expired, the bail company told the prosecution it found the defendant in Mexico and asked the court to toll the appearance period.  The court denied the request.  (*Ibid.*)  The bail company appealed and argued the court should read section 1305, subdivisions (g) and (h) to allow tolling while the prosecution makes its extradition decision.

The Court of Appeal interpreted section 1305, subdivisions (g) and (h) to require the bail company to find the defendant "far enough in advance of the end of the 180-day appearance period to

10

allow the prosecutor to decide whether or not to extradite."
(*Tingcungco*, *supra*, 237 Cal.App.4th at p. 258.)

The *Tingcungco* reasoning relied heavily on a failed amendment. (*Tingcungco*, *supra*, 237 Cal.App.4th at pp. 255–258.) That is, the Legislature considered an amendment in 2012 that would have required tolling of the appearance period pending prosecutors' extradition decisions and would have exonerated bonds if the prosecution did not decide within a reasonable time. (*Id.* at p. 255.) Instead of enacting that amendment, the Legislature passed an amendment with the substance of what is now section 1305, subdivision (h). (*Tingcungco*, at pp. 255–256.) That subdivision allows tolling after the prosecution has decided to extradite and it agrees it needs more time to do so. The Court of Appeal concluded, based on the legislative history, it would be untenable to interpret the statute to require the court to extend the appearance period under subdivisions (g) or (h). (*Id.* at p. 258.)

*Tingcungco* does not control for two reasons. First, it neither involved nor discussed section 1305, subdivision (j).

Second, the Supreme Court has cautioned against interpreting legislative history as *Tingcungco* did. "In most cases there are a number of possible reasons why the Legislature might have failed to enact a proposed provision. One reason might have been, of course, that the Legislature rejected the proposal on its merits. But the Legislature might equally well have been motivated instead by considerations unrelated to the merits, not the least of which is that it might have believed the provision unnecessary because the law already so provided . . . . Indeed, when as here a provision is dropped from a bill during the enactment process, the cause may not even be a *legislative*

11

decision at all; it may simply be that its proponents decided to withdraw the provision on tactical grounds." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 28.) This reasoning applies to the failure to amend an existing statute. (*Id.* at p. 29.) Unpassed amendments have little value as evidence of legislative intent. (*Ibid.*)

Following *Arnett v. Dal Cielo*, we give little weight to the unpassed amendment upon which much of the *Tingcungco* opinion relied. Perhaps everyone thought the amendment was a good idea but new priorities eclipsed the issue. Perhaps everyone disliked only part of the amendment and cut it all. There are infinite other possibilities. Drawing an inference from inaction can be misleading, for inaction, like silence, is often ambiguous.

The failure of a different proposed amendment to section 1305 demonstrates the variety of reasons why bills may die. In 2008, the Legislature passed a bill that would have amended section 1305, subdivision (g) to give the prosecution 60 days to decide to seek extradition. (Assem. Bill No. 1133 (2007-2008 Reg. Sess.) § 1.) The Governor returned the bill unsigned due to a "historic delay" in passing the state budget that "forced" him to consider only the "highest priority" bills. (Governor's veto message to Assem. on Assem. Bill No. 1133 (Sept. 26, 2008) 6 Assem. J. (2007-2008 Reg. Sess.) p. 7336.)

An idea—one that many thought was a good idea—just got lost in the shuffle. That does not mean the good idea was bad.

Courts generally do not interfere with prosecutorial decisions. (See *People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 380–381 [courts "have consistently read subdivision (g) of section 1305 as leaving the timetable and criteria for deciding whether to extradite squarely in the hands of the prosecuting agency"].)

12

It does not interfere with prosecutorial discretion to give prosecutors time for them to make a decision.

The reasonable reading of the statute does require the prosecutor to make *some* extradition decision before the court forfeits the bail. What will that decision be? That is entirely up to prosecutors. The trial court should have asked for the prosecution's decision or should have continued the hearing until the prosecution made its decision.

### DISPOSITION

We reverse the judgment, award costs to the appellants, and remand the case for further proceedings consistent with this opinion.


WILEY, J.


I concur:



STRATTON, P. J.



GRIMES, J.